(No. 24954.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* TIMOTHY H. KLAPPERICH, Plaintiff in Error.

*Opinion filed February 20, 1939.*

HAROLD LEVY, (WM. SCOTT STEWART, of counsel,) for plaintiff in error.

JOHN E. CASSIDY, Attorney General, THOMAS J. COURTNEY, State's Attorney, and A. B. DENNIS, (EDWARD E. WILSON, JOHN T. GALLAGHER, MELVIN S. REMBE, and BLAIR L. VARNES, of counsel,) for the People.

Mr. JUSTICE STONE delivered the opinion of the court:

Plaintiff in error (hereinafter referred to as defendant) was convicted in the criminal court of Cook county of receiving stolen property with knowledge that it had been stolen. The indictment consisted of three counts, the first two of which charged him with burglary and the third with receiving stolen property.

Defendant is a broker engaged in the business of buying and selling real estate securities and bonds. He had an office or desk space in the city of Chicago. He testified that he did a substantial business in bonds and other securities. On December 7, 1937, he visited the Amalgamated Trust and Savings Bank, where he had an account, and talked with the president of the bank, asking a loan, and offering a certain United States Treasury bond, described in the record, in the sum of $5000, as collateral security. The president, on investigation of the bond, discovered that it was listed as having been stolen. He so informed defendant and suggested that he return later in the day, which he did. Present at this second conference were

the bank officials, a representative of the Department of Justice, an attorney for one Moses Klein, shown to be the owner of the bond, and a representative of the Empire Box Corporation, from whose office the bond was alleged to have been stolen. At that time defendant explained how he came into possession of the bond. This explanation he later made to the police and to the State's attorney, and, likewise, from the witness stand, as will be hereinafter noted. There is no dispute as to the theft of the bond from the office of the Empire Box Corporation early in September, 1937.

Defendant had several interviews with the authorities and on February 2, 1938, was arrested. On the trial, he submitted in evidence a receipt dated September 30, 1937, purporting to be signed by one George Francois, acknowledging receipt of $15,000 of One North LaSalle Street first mortgage bonds in exchange for the United States Treasury bond here involved. He testified that he had written the body of the receipt and that the same had been signed by Francois. This evidence was disputed. The People called a handwriting expert who testified that the entire receipt had been written by the same person. In contradiction of this, defendant produced a handwriting expert who testified that, in his opinion, the signature was not written by the same person who wrote the body of the document. Defendant testified that Francois gave his address as 1025 North Dearborn street. A witness was produced by the People who, with others, had for some years conducted a rooming house at that address, and who testified that no one by the name of George Francois or George Francis ever lived there.

There is no evidence in the record that defendant burglarized the office of the Empire Box Company or that he had stolen the bond. His testimony, which is substantially the same as his statements made before the trial, was that he had secured the bond from George Francois on September 30, 1937; that prior to that time he had never seen

Francois but had talked to him on the telephone and was told by him that he was formerly a client of defendant's attorney, who had informed him that defendant had first mortgage bonds for sale and, if he desired such, to get in touch with him. He testified that Francois asked him what he had and he told him of various bonds which he had, including $15,000 first mortgage bonds on the One North LaSalle Street building, and $11,500 on the Clark-Morse building. He told Francois that he would take $6000 for either the One North LaSalle Street or the Clark-Morse bonds; that Francois told him he would look them up and, if interested, would call him; that a couple of days later he came to the office and offered to take the One North LaSalle Street building bonds in exchange for the United States Treasury bond involved here, which he had with him. Defendant testified that he called his bank and inquired as to the quotation on the bond and learned that it was quoted at 110 or 111, and he agreed to the trade, taking Francois' receipt for the transaction.

At the conclusion of the People's case defendant moved to require an election on the part of the People as to the count on which they would proceed, and also moved for a directed verdict. These motions were denied. The second count was *nolle prossed* and the trial proceeded on the first and third, the first, as we have seen, being the burglary count, and the third, receiving stolen property.

Defendant produced numerous witnesses who testified to his previous good reputation for honesty. The first error assigned is in the giving of the People's sixth instruction. This instruction is as follows: "If you believe from the evidence beyond a reasonable doubt that the property described in the indictment was stolen and shortly thereafter was in the exclusive possession of the defendant, such exclusive possession, if unexplained, is sufficient evidence to warrant a conviction. On the other hand, if you believe that the evidence in the case tends to explain such recent

exclusive possession and creates in your minds a reasonable doubt as to the guilt of the defendant, then such exclusive possession is not sufficient to warrant the conviction."

Counsel for defendant urge that this instruction is not the law as applied to the crime of receiving stolen property. The People argue that since burglary, larceny and receiving stolen property may be joined in one indictment, the People are not required to elect, at the close of the evidence, which count will be relied upon, since both are based on the same transaction, and while the defendant was found guilty of receiving stolen property under the third count, the verdict was, in effect, as though the jury had returned a not guilty verdict as to the burglary count, and, hence, plaintiff in error was not injured by the instruction. The counts of the indictment were properly joined and the People were not required to elect the count upon which they would proceed. (*People* v. *Brocamp,* 307 Ill. 448; *People* v. *Goodman,* 283 id. 414; *People* v. *Weil,* 243 id. 208.) The verdict of guilty on the third count was equivalent to a verdict of not guilty on the first count. *People* v. *Manning,* 365 Ill. 98; *People* v. *Smithka,* 356 id. 624; *People* v. *Weil, supra.*

It will be noted, however, that the instruction complained of was not limited to the count for burglary but left the jury at liberty to apply it to either count. Knowledge of the defendant, when he received the property, that it was stolen, is essential to conviction of the crime of receiving stolen property, knowing it to be stolen, and such knowledge must be proved beyond a reasonable doubt. (*People* v. *Knight,* 323 Ill. 567; *People* v. *Ensor,* 310 id. 483; *People* v. *Brooks,* 340 id. 74.) Recent possession of stolen property is not evidence of the crime of receiving stolen property, knowing it to be stolen. (*People* v. *Knight, supra; People* v. *Lardner,* 296 Ill. 190.) The jury was told, not that exclusive possession, if unexplained, is suffi-

cient evidence to warrant defendant's conviction of burglary, or under the burglary count, but that it was sufficient to warrant his conviction. The question whether plaintiff in error had knowledge, at the time he received the bond, that it was stolen, was a closely controverted question of fact. This is not a case where it could be said that the jury could not reasonably have found a verdict of not guilty. It was, therefore, necessary that the record be free from prejudicial error.

The People say that, as the instructions are to be taken as a series, the error of this instruction, if it was error, was cured by instructions 8 and 9, which specifically advised the jury that knowledge on the part of the defendant at the time the bond was received, that it was a stolen bond, was essential to conviction, and must be proved beyond a reasonable doubt. Those instructions, however, do not eliminate the vice of instruction 6, which told the jury that evidence of possession, unexplained, is sufficient to warrant the conviction of the defendant. The jury may have well considered possession by the defendant as evidence that he received the bond, knowing it to be stolen. There is no direct testimony in the record that the defendant had such knowledge, and it was prejudicial error to give this instruction without limiting it to the burglary count.

Portions of the State's attorney's closing argument are also objected to in that he discussed the possibility of the defendant being put on probation. Exception was taken and a motion for withdrawal of a juror, because of this improper argument, was made. The motion was denied. The People's answer to this complaint is that defendant's counsel, in his argument, had made use of the word "penitentiary," referring to a verdict which would commit defendant to the penitentiary. Neither counsel had any right to argue the effect of the verdict of the jury in those cases where the jury has nothing to do with fixing the punish-

594

ment. In such cases, the statutes as to punishment and probation have no relation to the trial of a criminal case. The effect of the argument of the State's attorney may well have influenced the jury in arriving at a verdict of guilty. The argument was error.

For the reasons herein indicated, the judgment of the criminal court is reversed, and the cause remanded.

*Reversed and remanded.*