THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
LORENZO HUGHES, Defendant-Appellant.

Third District   No. 76-37

Opinion filed August 31, 1977.

Robert Agostinelli and Mary Robinson, both of State Appellate Defender's Office, of Ottawa, for appellant.

Fred R. Odendahl, State's Attorney, of Monmouth (James E. Hinterlong, of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE STOUDER delivered the opinion of the court:

After a jury trial in the circuit court of Warren County, the defendant, Lorenzo Hughes, was found guilty of the offense of aggravated battery in violation of section 12—4(b)(1) of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 12—4(b)(1)). He was sentenced to a term of two years probation with the special conditions that he serve six months in the county jail, pay a fine of $500 and make restitution to the victim for $1,879.41.

On this appeal the defendant makes two assignments of error, both relating to rulings by the trial court on evidentiary questions. First, the defendant argues the trial court erred in denying any questions or mention of the victim's statement that he was pursuing criminal action in order to secure payment of his hospital and medical expenses. Second, defendant argues the court erred in permitting evidence of the defendant's statement that he had committed an offense similar to the one charged in the instant case in another State.

The facts need be summarized only briefly. At trial both the complainant, George Mitchell, and the defendant, Lorenzo Hughes, testified about the events leading up to the incident which was the basis of the charge.

About 9 p.m. Mitchell and Hughes were in Beulah's tavern. They were drinking and also playing a bowling game machine against one another, as well as with others in the tavern. A disagreement ensued as a result of a bet, the nature of the disagreement being that Hughes believed he might have given Mitchell a $5 bill in payment instead of the $1 which he owed. Mitchell and Hughes seated themselves at opposite ends of the bar but the dispute continued with mutterings, threats and other interchanges. According to Hughes, Mitchell made threats to "cut up" him if he didn't stop claiming that he (Mitchell) had taken his money. At some point in the argument, Hughes got off his bar stool and was continuing the argument while standing about four steps behind Mitchell. According to Hughes, Mitchell got off his bar stool and started toward him with a knife in his hand. According to Mitchell, as he was about to get off his bar stool, Hughes warned him not to put his hands in his pocket and then Hughes shot Mitchell. Hughes then left the tavern and returned to his home where he was later arrested.

After the shooting incident occurred, the police were called, an ambulance was summoned and Mitchell was taken to the hospital. At the time of the incident there were from 12 to 20 patrons in the tavern. Investigating police officers took the names and statements of 6 persons in the tavern including the bartender, but did not ascertain who the other persons in the tavern were. At the trial these persons testified in behalf of the prosecution. Their testimony, while generally corroborating Mitchell's account of the incident, varied in crucial details as might be expected. Their testimony varied from indicating that Mitchell had just started to get off the bar stool, that he was off the bar stool standing facing Hughes, to an account where Mitchell had taken a step or two toward Hughes when the shooting occurred. In addition, it was shown that all the witnesses supporting Mitchell's testimony were personal friends and acquaintances of long standing. None of the witnesses were friends or acquaintances of Hughes. All the witnesses agreed that they did not see a

knife in Mitchell's hand. No knife was discovered, but there was no immediate search of Mitchell, the tavern premises or the ambulance.

Prior to trial the People submitted a motion in limine requesting an order "prohibiting the introduction of any evidence, the asking of any questions directly or by inference and the making of any comments by counsel" concerning the attitude of George Mitchell "that he is only interested in receiving restitution for his medical expenses and is indifferent or opposed to pursuance of further criminal charges against the defendant." The trial court agreed with the People such evidence was irrelevant and ordered the requested prohibition.

On this appeal the defendant argues as he did in the trial court that the interest of the complaining witness in securing payment of his medical expenses constituted a factor which might adversely affect the quality of the witness's testimony. We agree.

■■ ■ The widest latitude should be afforded a defendant in a criminal trial to demonstrate the bias of the witnesses against him. (*People v. Barr*, 51 Ill. 2d 50, 280 N.E.2d 708.) The defendant should be allowed to demonstrate that a witness has a personal stake in the outcome of the trial if such be the case. *People v. Jackson*, 116 Ill. App. 2d 304, 253 N.E.2d 527.

In *People v. Bouderioyni*, 299 Ill. 96, 132 N.E. 501, where the offense charged was that of taking indecent liberties with a minor boy, the court held that evidence of the victim's father's offer to drop charges if defendant paid him a certain sum of money was improperly excluded. Similarly, evidence that a rape victim's family had offered not to file charges if the defendant made payment was held to have been wrongfully disallowed in *People v. Provenzano*, 305 Ill. 493, 137 N.E. 414. In each case the evidence was admissible to impeach the credibility of the witnesses testifying against the defendant. It is true that in each of the foregoing cases there were other errors in the proceedings, but this fact does not dissipate the court's reasoning on the impeachment issue. The *Bouderioyni* and *Provenzano* cases clearly refute the People's principal contention that the evidence did not effect the credibility of the witness. If a witness has or may have a financial interest or expectancy of a financial benefit depending on the outcome of the litigation, the quality of his testimony may be affected. Under such circumstances, the witness's memory or recollection may be influenced or at least colored so that the recollection is supportive of the desired result. If the complaining witness in the instant case expected to recover his medical expenses it was necessary that any account of the incident eliminate the possibility that he was the aggressor.

In the instant case, the facts were hotly contested. The defendant contended Mitchell had threatened to cut him and was advancing toward

him with knife in hand at the time of the shooting. Mitchell on the other hand denies making any threats and denies any conduct which threatened or should have been deemed threatening by the defendant. Thus the principle issue which the jury was required to resolve was which of the parties was the aggressor. The additional witnesses testifying for the prosecution tended to support the version of the incident testified to by Mitchell. Yet, they were all friends of the victim, all had varying accounts of the incident and consequently, in the final analysis, the credibility of Mitchell was a vital issue in the proceeding. We believe the error of the court in excluding evidence affecting Mitchell's credibility was highly prejudicial and consequently a new trial is required. This brings us then to the other issue raised by the defendant, namely, whether the trial court erred in permitting evidence of his statement that he had been involved in a similar offense in Troy, Missouri.

At trial, Officer Frank Piper testified that he went to Hughes' residence to arrest him. When he arrived, Hughes was pacing and either talking to himself or some children who were present. Piper heard Hughes say something about "the man had a knife and he was going to cut him and he stated nobody was ever going to cut him and also kept making statements like something—about this happened before at Troy, Missouri." Piper testified that he read Hughes the *Miranda* warnings, and after that:

> "I don't know whether he was paying attention to what I was saying or not but he kept insisting the man had a knife and he was not going to be cut and several times he kept bringing up the point about Troy, Missouri. At that time I didn't have any idea what he was talking about Troy, Missouri, but he kept saying something similar to this happened in Troy, Missouri and he had shot a man in Troy, Missouri."

Defense counsel objected at this point, asked that the testimony concerning another shooting be stricken and further moved for a mistrial. A conference was held out of the presence of the jury wherein the court denied the motion to strike, apparently finding the statements admissible as admissions. A part of the colloquy which took place outside the presence of the jury on the defendant's motions is as follows:

> "BY THE COURT: This is testimony which the defendant himself has spoken.
>
> BY MR. STANDARD: That doesn't mean it is admissible in court. Many things that people say directly are not admissible in evidence.
>
> BY THE COURT: I think it all depends on when he says it."

The court decided, however, to admonish the jury that the statements were not admissible for truth and gave the following instruction:

> "I am going to admonish the jury there has been a motion to strike

this last part of the testimony about shooting a man in Troy, Missouri. I am going to admonish the jury this is being admitted only for the purpose of what Mr. Hughes said and not for the truth of what he said. Do you understand what I mean? That is whether or not a man was shot in Missouri is immaterial. It is being allowed for the purpose of what he said at the time he was arrested and not for the truth of that statement."

■■ The general rule is that evidence of other criminal offenses is irrelevant to the issue of defendant's guilt of the offense with which he is charged and hence such evidence is inadmissible. There are, however, well-recognized exceptions to this rule. On this appeal the People do not claim that the evidence from another offense comes within any exception. Rather, the People argue first, the defendant waived any objection to the trial court's ruling by failing to specify the objection in his post-trial motion; second, that the reference to the other offense was inadvertent; and third, because the reference to the other offense was inadvertent and minor, no prejudice resulted of which the defendant may now complain.

A review of the post-trial motion reveals as the People insist that the defendant did not specify this objection in his post-trial motion. In his reply brief defendant urges this issue should be regarded as plain error under Supreme Court Rule 615(a) (Ill. Rev. Stat. 1975, ch. 110A, par. 615(a)). Since we have already determined a new trial is required in this case, we find it unnecessary to decide whether the error complained of is or is not plain error. However, we believe it is appropriate to discuss the issue in order that potential problems which may reoccur at a new trial be resolved.

■■ From the brief of the People it appears that they agree the trial court erred in ruling on the defendant's motion to strike and exclude the testimony of the officer concerning the other offense in Troy, Missouri. We believe the impropriety of the testimony, the court's ruling and its subsequent instruction is amply demonstrated and supported by *People v. Gregory*, 22 Ill. 2d 601, 177 N.E.2d 120; *People v. Oden*, 20 Ill. 2d 470, 170 N.E.2d 582, and *People v. Meid*, 130 Ill. App. 2d 482, 264 N.E.2d 209. We find no support for the People's contention that the references were inadvertent, of minor significance and not prejudicial. Where the prosecution argued, as it did in the trial court, that the evidence was proper, it can hardly be said that the testimony was inadvertent, unresponsive or unanticipated. In the context of this case the reference to another shooting incident could only suggest to the jury a propensity to commit such offenses including the offense charged. This is not an appropriate purpose for introducing or permitting evidence of other offenses.

For the foregoing reasons the judgment of the circuit court of Warren

County is reversed and remanded with directions the defendant be granted a new trial.

Reversed and remanded with directions.

STENGEL, P. J., and BARRY, J., concur.