THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* HAROLD
GRAVES (Impleaded) *et al.*, Defendants-Appellants.

Third District   No. 76-76

Opinion filed November 29, 1977.

STOUDER, J., dissenting.
ALLOY, P. J., specially concurring.

John L. Barton, of Marseilles, for appellants.

Frank X. Yackley, State's Attorney, of Ottawa (James E. Hinterlong and John X.
Breslin, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE BARRY delivered the opinion of the court:
   During the trial of Harold Graves for armed robbery, burglary and
theft, the defendant's appointed counsel, John L. Barton, was convicted
of contempt and sentenced to pay a $50 fine. The evidence presented at
the trial tended to indicate that the offenses charged were committed by
Graves in concert with Mickey Boardman, who testified in behalf of the
State at Graves' trial.
   On direct examination, Boardman, implicated Graves and explained

that his willingness to testify was predicated upon an arrangement with the State's Attorney where Boardman agreed to plead guilty to burglary and to receive a sentence of probation in return for his testimony against Graves. It was during the cross-examination of Boardman that the conduct occurred which formed the basis of the contempt. In questioning the witness concerning his deal with the State, the defense counsel asked, "[a]nd what were you looking at if you didn't take that deal?" Following an objection by the State, a discussion was had outside the presence of the jury. The trial court, after recognizing that, although the penalty facing the defendant upon conviction for the alleged offenses may not be placed in evidence before the jury, the defense counsel is allowed to question the witness concerning the benefit that witness received in return for testifying, ruled that the defense counsel's question would be allowed to show the witness' inducement to testify by asking him what he believed the penalty to be based on what the authorities informed the witness. Therefore, the defense counsel could ask the witness about his personal knowledge, but the trial court ruled that the witness could not be asked what the penalty actually was for the offenses for which the witness, like Graves, was originally charged.

Nevertheless, after the jury was recalled, the following questions were asked of the witness:

"MR. BARTON: Mr. Boardman, you're charged with Armed Robbery in this case aren't you?

A. Yes.

Q. And you can't get probation for Armed Robbery, can you? [Objection sustained].

Q. And as a matter of fact, you can get life in prison for Armed Robbery, can't you?"

The State's Attorney objected to both questions, and as a result of these questions being put to the witness, the trial court summarily found the defense counsel in contempt and ordered him to pay a $50 fine.

■■■ Direct contempt may occur either in the presence of the judge or outside the immediate physical presence of the judge but within an integral part of the court. (*People ex rel. Kunce v. Hogan* (1977), 67 Ill. 2d 55, 364 N.E.2d 50.) Regardless of where the act occurs, any conduct which is "calculated to embarrass, hinder or obstruct a court in its administration of justice or to derogate from its authority or dignity, or bring the administration of law into disrepute" is conduct for which a person may be found in contempt of court. (*In re Estate of Melody* (1969), 42 Ill. 2d 451, 452, 248 N.E.2d 104, 105. See also *People v. Sherwin* (1929), 334 Ill. 609, 166 N.E. 513.) Where the contemptuous conduct occurs in open court, the trial judge, acting upon his personal knowledge of the facts, may summarily punish the offender without the need for any

additional process or procedure. See *Ex parte Terry* (1888), 128 U.S. 289, 32 L. Ed. 405, 9 S. Ct. 77; *People v. Jashunsky* (1972), 51 Ill. 2d 220, 282 N.E.2d 1; *People v. Sherwin* (1929), 334 Ill. 609, 166 N.E. 513.

■■ In the case at bar, the trial court specifically ruled that the defense counsel could ask the witness what penalty, to the best of his knowledge, he was avoiding by accepting probation, but could not ask the witness what the actual penalty would be for any of the offenses with which the witness was originally charged, because those offenses were the same as were charged against the defendant. We are not here deciding that the trial court's ruling was correct as a matter of law. What we are now deciding is that the trial court's ruling was not ambiguous and that the defense counsel committed contempt of court by asking the witness about the penalty for the crime charged, thereby blatantly disregarding the trial court's ruling. Clearly, disregarding the ruling of a trial court is a hindrance to the administration of justice. Not only did the defense counsel fail to obey the ruling, he incorrectly implied that the witness, and therefore the defendant, could receive life imprisonment for armed robbery.

The defense counsel in this case is an experienced, competent attorney. As such, there appears to be no reason the defense counsel could have misconstrued the trial court's ruling, and therefore, the trial court could have reasonably inferred that the defense counsel's contumacious conduct was intentional.

Accordingly, the judgment of the Circuit Court of La Salle County is affirmed.

Affirmed.

Mr. PRESIDING JUSTICE ALLOY, specially concurring:

I concur in the opinion affirming the trial court in the instant case. While I would not have found defendant in contempt had I been sitting as the trial judge, I do not believe that we could consistently conclude, on the basis of the record as a whole and the precedents cited, that the trial court in the instant case improperly exercised the power of contempt.

Mr. JUSTICE STOUDER, dissenting:

I must respectfully dissent from my colleague's opinion. Attorney Barton did not hinder or impede the administration of justice by questioning the State's accomplice witness as he did. The ambiguity of the judge's ruling, the absence of prior warning, and the propriety of the questions as asked, all dictate that the contempt order was improper.

Boardman, on cross-examination, was asked "And what were you looking at if you didn't take that deal?" The People objected to this

question without stating any reason therefore, but the objection was sustained by the trial court. At this juncture defense counsel requested a hearing on the issue outside the presence of the jury and a discussion was had outside the presence of the jury. The colloquy between counsel for each side and the court was extensive, but for the purposes of setting forth my position only a summary is required.

It was the position of the People that if it was elicited from the witness that the charge against him for armed robbery had or would be dropped and a specified statutory penalty for the offense had thereby been avoided, this would then improperly reveal to the jury the penalty for the offense charged against the defendant. The court indicated that this was the general rule, but the court agreed with defense counsel that the jury was entitled to know all of the benefits which the witness had or would receive because of his agreement to testify against the defendant. The trial court adopted a compromise position indicating that it was not the statutory penalty which was of significance, but rather the knowledge of the witness as to the penalty which he may have avoided. Although the witness's knowledge was of primary concern to the trial court, no claim was made by the State's Attorney that the witness was unaware of the penalty for armed robbery or was not properly informed of the serious penalties which he would avoid if he testified. During the colloquy the State's Attorney persisted in his position that regardless of its effect on the credibility of the accomplice witness, defense counsel was not entitled to bring out the penalty for armed robbery for any purpose.

When the trial resumed and the jury returned, Barton asked the witness the following questions; "Mr. Boardman you're charged with armed robbery in this case, aren't you?" "And you can't get probation for armed robbery, can you?" "and as a matter of fact, you can get life in prison for armed robbery, can't you?"

Objections to the last two questions were sustained by the trial court. Outside the presence of the jury, Barton was summarily found in contempt of the court's order "not to mention the penalty" and fined $50. The trial then resumed before the jury and no further mention was made of the penalty for armed robbery.

As observed in *In re McConnell*, 370 U.S. 230, 236, 8 L. Ed. 2d 434, 438, 82 S. Ct. 1288, 1292, "The arguments of a lawyer in presenting his client's case strenuously and persistently cannot amount to a contempt of court so long as the lawyer does not in some way create an obstruction which blocks the judge in the performance of his judicial duty." According to *Ex Parte Hudgings*, 249 U.S. 378, 383, 63 L. Ed. 656, 658-59, 39 S. Ct. 337, 339:

> "An obstruction to the performance of judicial duty resulting from an act done in the presence of the court is, then, the characteristic upon which the power to punish for contempt must

rest. This being true, it follows that the presence of that element must clearly be shown in every case where the power to punish for contempt is exerted * * *."

The same basic concept has been expanded upon by our supreme court: "The power to adjudge guilt and impose punishment without proof or examination, and without plea, trial or issue exists in no other situation or proceeding. It is an exception to our constitutional guarantees which we would regard as intolerable in any other proceeding or for any other purpose. It is readily susceptible of abuse and fraught with danger not only to personal liberties but to the respect and confidence which our courts must maintain. Although such a power is universally recognized as essential to an orderly and effective administration and execution of justice, it should be exercised with utmost caution and strictly restricted to acts and facts seen and known by the court, and no matter resting upon opinions, conclusions, presumptions or inferences should be considered." *People v. Loughran*, 2 Ill. 2d 258, 263, 118 N.E. 310, 313.

I believe the foregoing encompasses a rule which prohibits imposition of a contempt order when the ruling alleged to have been violated lacks clarity or is susceptible to more than one interpretation. This is particularly so when no prior warning or admonition is given, for the process of warning or admonishing counsel necessarily elucidates the trial court's position.

The commentary to standard 7.2 of the American Bar Association's Standards Relating to the Function of the Trial Judge (1972) provides: "A prior warning is desirable before punishing all but flagrant contempts. A warning may be effective in preventing further disorder and is therefore preferable to sanctions as a first step. It also assures both the court and the public that subsequent misconduct will be wilfully contemptuous and deserving of punishment. Moreover, the practice of warning before imposing punishment reduces the risk that attorneys will be deterred by the fear of punishment from exercising zealous advocacy. *Cf. Illinois v. Allen*, 397 U.S. 337, 350 (1970) (concurring opinion of Justice Brennan), suggesting that a warning is mandatory prior to removal of the defendant."

Here, no warning was given that the court believed the questions violated its previous ruling. Had all questions on the matter been prohibited, Barton's further inquiries might then amount to the "flagrant contempt" referred to in the ABA Standards and thereby justify imposition of a contempt order without prior warning. However, the ruling did not prohibit all questions, but merely restricted the area of inquiry. The court

indicated the substance of questions which would be permissible based on the witness's knowledge of the potential penalty. However, the court's reasoning as well as the substance of the question to be proposed support the conclusion that the initial question which defense counsel asked and to which an objection was sustained, was a proper question. The principal objective of the colloquy outside the presence of the jury at the request of defense counsel was for the purpose of discussing the objection which the court had sustained. The court modified its ruling by implication and by so doing the court's position became wanting in decisiveness and clarity. The directions of the court were not so definitive that the action of the defendant in asking the questions which he did can be regarded as disobedience of a clear order of the trial court. In light of the lack of warning and the ambiguity in the court's ruling, I believe the trial court erred in imposing a sentence of contempt.

Nor can it be said that the questions unduly interfered with the trial. It does appear the questions disturbed the judge, but in large part for reasons irrelevant to any issue related to defendant's alleged contumacious conduct. The judge not only stated the defendant had violated his order but also declared "* * * it's an absolute misstatement of the law. You kindly show me in Chapter 38 where you can get life in prison. You deliberately misstated the law to the jury, you deliberately defied the Order of this Court not to mention the penalty. * * *" The reference to what the court considered an improper statement of the penalty for armed robbery was not any violation of any order of the judge. The penalty itself had not even been discussed earlier. While an objection to the question might have been sustained because of its reference to "life imprisonment," no such objection was made. The misstatement would seem to be of little significance. In fact, if the penalty referred to was described as "any number of years," and as examples of minimum terms such as 20, 40 or 100 years imprisonment had been referred to, the differences between such terms of years and life imprisonment is largely semantic. The misstatement of the penalty was not an appropriate reason for finding the defense counsel's conduct contumacious, yet, this fact seems to have unduly disturbed the trial judge and is advanced in his ruling as a substantial reason for finding the conduct of defense counsel objectionable.

Of equal significance is the fact that the penalty the witness avoided by testifying for the State was a proper matter for inquiry on cross-examination, despite the likelihood of such a cross-examination revealing to the jury the penalty for the offense defendant Graves was charged with.

In *People v. Kuelper*, 46 Ill. App. 3d 420, 361 N.E.2d 29, a State's Attorney refused to conduct a preliminary examination of a defendant after the trial judge ordered him to do so and the attorney was held in

direct contempt because of his refusal. On appeal from the contempt order, the State's Attorney argued that his conviction should be reversed because his position at trial was legally correct and his conduct was one of advocacy only and not calculated to disrupt the proceedings of the court. After analyzing the State's Attorney's position at trial and finding it correct, the appellate court stated:

> "It is clear, then, that in the case at bar preliminary hearing would serve no legitimate purpose since probable cause had already been established by the grand jury. It is difficult to see how a refusal to proceed with a preliminary hearing under these circumstances could be construed as a direct contempt of court * * *.
>
> But let us go further and assume, arguendo, that condemnor's position was not a legally correct one. It is equally difficult to perceive how an attorney who in good faith is representing his client's interest, and while so doing comports himself in a proper and respectful, albeit forceful, manner toward the court can be deemed to be in contempt. A stand taken by counsel in good faith and in the interests of his client should not ordinarily serve as a basis for a charge of contempt." (46 Ill. App. 3d 420, 423, 361 N.E.2d 29, 31.)

Here, counsel's effort at revealing the benefits the witness received as a result of his lenient treatment was legally correct and advocating that position in a respectful manner should not be the basis of contempt. Barton's conduct was within the limits of vigorous advocacy which our form of procedure requires. The chilling effect of the court's action on vigorous advocacy is evident because the lenient treatment the witness received was not pursued as it could and should have been, even though this was held to be a permissible area of inquiry by the trial court.

In *Weiss v. Burr* (9th Cir. 1973), 44 F.2d 973, an attorney who was warned and ordered to desist in a certain line of questioning on several occasions was judged guilty of contempt because of his persistence in the line of questioning and his remarks related thereto in his final argument. On appeal, his conviction was reversed because as a matter of law his conduct did not exceed the bounds of fair advocacy. In the instant case the defendant did not persist in prohibited conduct after any warning and his conduct is substantially less objectionable than that found not to be contumacious in the *Weiss* case.

The attorney's conduct in continuing questions after the trial court had directed him not to do so on several occasions, was also found insufficient to support conviction in *In re McConnell*, 370 U.S. 230, 8 L. Ed. 2d 434, 82 S. Ct. 1288. In *McConnell* the attorney's persistence in asking questions

despite the court's admonition not to do so, took place before the jury and were accompanied by the assertion by the attorney that "We have a right to ask the questions, and we propose to do so unless some bailiff stops us." The attorney did not in fact ask any more questions of the nature prohibited. The court in *McDonnell* again considered that the conduct of the attorney did not constitute an obstruction of the court's process.

In *People v. Miller*, 130 Ill. App. 2d 637, 265 N.E.2d 175, an attorney was held in direct contempt for conduct which the appellate court believed was responsible for a mistrial. After setting out the lengthy diatribe between the trial court and counsel in several different settings, the appellate court found that because of the attorney's conduct, the trial court was hindered and obstructed in continuing the case before it and affirmed the contempt conviction. The appellate court decision was reversed in *People v. Miller*, 51 Ill. 2d 76, 281 N.E.2d 292, where the court found that "[w]hile counsel may have been overzealous or improperly sarcastic at times, we are of the opinion that his conduct in the courtroom constituted a good faith attempt to represent his clients without hindering the court's function or dignity, and, therefore, that they did not constitute a direct contempt of court." (51 Ill. 2d 76, 79, 281 N.E.2d 292, 294.) The severity of whatever impropriety occurred in the instant case was much less than in *Miller*. From application of the foregoing principles, I believe that defendant's conduct did not hinder or obstruct the orderly administration of justice.

I have reviewed all of the authorities cited by the majority and am in agreement with the reasoning and result presented in each. However, none of the cases present analogous factual situations so that their citation is not of special significance in supporting the conclusion of the majority. Our system of jurisprudence is founded upon vigorous advocacy and without it, the system cannot continue to thrive. I would reverse defendant's conviction for direct contempt.