THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* HAROLD GRAVES *et al.*, Defendants-Appellants.

Third District    No. 76-329

Opinion filed December 7, 1977.

BARRY, J., specially concurring.

John L. Barton, of Marseilles, for appellants.

Frank X. Yackley, State's Attorney, of Ottawa (James E. Hinterlong and John X. Breslin, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE STOUDER delivered the opinion of the court:

After a jury trial defendant, Harold Graves, was found guilty of the offenses of armed robbery, burglary and theft. Judgments of conviction were entered by the circuit court of La Salle County for the offenses of armed robbery and burglary and concurrent sentences of imprisonment of 7 to 20 years and 5 to 15 years, respectively, were imposed. The convictions related to offenses which took place at the Grewenig house in Ottawa, Illinois. Two other charges of burglary and theft which took place at the Navarro house were dismissed after the convictions and sentences described.

On March 19, 1975, Katherine Grewenig surprised two persons in the act of burglarizing her home. She later identified the persons as the defendant and Mickey Boardman. She saw Boardman leave her house and walk past her down the alley. As she entered her kitchen Grewenig saw defendant in the doorway to an adjoining bedroom. When defendant saw Grewenig, he went back into the bedroom and returned with a tear gas projector. She was forced into the basement and the defendant thereafter fled with a coin collection and some items of jewelry.

Boardman was also charged with the offenses at the Grewenig house. After his agreement to testify in behalf of the prosecution, Boardman was permitted to plead guilty to burglary and granted probation.

The first issue which we shall consider on this appeal is the defendant's contention that evidence of the burglary and theft at the Navarro house was improperly permitted.

Defendant was charged with the offenses occurring in the Navarro house on March 18, 1975, and also with offenses occurring at the Grewenig house on March 19, 1975. The People elected to try those charges relating to the offenses occurring at the Grewenig house first.

Prior to trial, the defendant moved in limine to exclude evidence of the Navarro burglary from the trial of the defendant for the offenses occurring in the Grewenig house. In opposition to the motion the People proposed that the co-defendant Mickey Boardman when called as a witness would testify that he and Graves had learned from a fence of a coin collection located in a house at 215 West Superior Street in Ottawa, Illinois. Boardman would further testify that by mistake they went to the house at 215 East Superior Street in Ottawa, which is the Navarro house. After discovering they had burglarized the wrong house on March 18, they went to the Grewenig house at 215 West Superior on March 19, resulting in the offenses previously described. The motion in limine was denied. When Boardman later testified his testimony was consistent with the offer of proof proposed by the People.

At trial Susan Navarro testified to coming home at about 10 a.m. on March 18, 1975, and discovering a burglary in progress. The two offenders fled, but shortly afterwards Boardman was apprehended by a police officer and returned to the Navarro house at which time Susan Navarro identified Boardman as one of the burglars. He was not, however, arrested at the time, but on the contrary, was released.

In addition to the testimony of Boardman concerning the burglary of the Navarro house, the police officer also testified confirming the incident as described by Navarro and Boardman.

■■ The general rule is that evidence of other criminal offenses is ordinarily inadmissible in a trial for another offense. (*People v. Butler*, 133 Ill. App. 2d 299, 273 N.E.2d 37.) This rule has its exceptions and where evidence of other criminal misconduct proves or tends to prove scheme, design or identification, such evidence is admissible. (*People v. McDonald*, 62 Ill. 2d 448, 343 N.E.2d 489.) These are the reasons expressed by the trial court in permitting the evidence of the other offenses and in our opinion the trial court acted properly.

■■ Defendant insists the only purpose of the evidence of the Navarro burglary was to corroborate the testimony of Boardman, the accomplice witness. He further suggests that the evidence cannot be considered as probative of scheme or design where the nature of the conduct or modus operandi is different. We agree that the conduct of the parties in carrying out each burglary was somewhat different, but we do not agree that the scheme or design is limited to the introduction of evidence of offenses having a common or similar modus operandi. Scheme or design in itself suggests a logical relationship between the two offenses and in this respect, we believe the testimony of Boardman does establish a relationship between the offenses. That the burglary of the Navarro house was a mistake or an accident, and the reasons therefore, does establish a link between the two burglaries and not only offers a motive for the burglary of the Grewenig property, but also buttresses the identification of the defendant as one of the burglars. That it may also incidentally enhance the credibility of the People's accomplice witness does not mean that the evidence is improper.

Next the defendant argues the court committed error when it ruled on two motions after the defendant had moved for a substitution of judge as of right under section 114—5(a) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1975, ch. 38, par. 114—5(a)). The motion for substitution of judge was denied, but later the trial court determined that a substitution of judge was desirable and the change was accomplished. However, the previous motions were not reconsidered.

We have reviewed the record and conclude the trial court did not err in ruling on the motions. It was not precluded from so doing on account of

the substitution of judge motion. In the first place it seems the record does not clearly support the defendant's account of the events which took place or their chronology. According to the defendant, after the trial calendar was published and within 10 days, he moved for substitution of judge under section 114—5(a) which required a substitution of judge as a matter of right. However, the record indicates that earlier, on May 23, 1975, defendant had filed a motion for substitution of judge for cause based on section 114—5(c) (Ill. Rev. Stat. 1975, ch. 38, par. 114—5(c)) which motion was denied the same day. Subsequent to the denial of this motion defendant moved for substitution of judge under section 114—5(a) and also moved for suppression of evidence. The People also moved for an order requiring defendant to appear in a lineup. The motion for suppression of evidence was denied and the propriety of this order on its merits will be considered later in this appeal. The motion requesting defendant be ordered to appear in a lineup was granted and the propriety of this motion on its merits will also be considered later in this opinion. Thereafter, the defendant called his motion for substitution of judge under section 114—5(a) for hearing and the court also denied this motion. Thus the claim by the defendant that the trial court erroneously denied his motion for substitution of judge prior to ruling on the motions is not supported by the record and in fact that record reveals that defendant made no effort to have the motion heard before the rulings were made.

■■ The defendant is also in error in suggesting that the court's denial of his motion for substitution of judge under section 114—5(a) was erroneous. Even if the trial court did later decide to grant the substitution of judge, this does not mean the original order denying such motion was improper. The record indicates that prior to denying the motion, the court had made rulings on substantive issues of the case. Even where the substitution of judge was sought under section 114—5(a), relief is appropriate only if there have been no prior substantive rulings by the judge from whom a substitution of judge is sought. *People v. Speck*, 41 Ill. 2d 177, 242 N.E.2d 208, *rev'd on other grounds*, 403 U.S. 946, 29 L. Ed. 2d 855, 91 S. Ct. 2279, and *People v. Johnson*, 24 Ill. App. 3d 152, 320 N.E.2d 69.

As indicated earlier, defendant moved to suppress evidence claiming the same had been seized as a result of an illegal search. The motion indicated that the search was without a warrant and without probable cause to make a warrantless search. However, the motion failed to allege any interest of the movant and this was one of the reasons that the trial court denied the motion. The other reason for denying the motion was the failure of the movant to give appropriate notice to the People in order that they might have time to consider a response.

■■ ■ The defendant's position on this appeal is that the motion to

suppress need not allege any interest, but that it is sufficient if an interest subject to constitutional protection is shown by the evidence. He relies on *People v. McNeil*, 53 Ill. 2d 187, 290 N.E.2d 602, to support his position. *McNeil* is not authority for such proposition. In *McNeil* the court observed:

> "[W]e adhere to the rule requiring a defendant to establish the manner in which his constitutional rights have been violated before permitting him to challenge the validity of a search and seizure." (53 Ill. 2d 187, 192, 290 N.E.2d 602, 605.)

Standing to question the constitutionality of a search and seizure is and should be quite liberal, but such a rule does not relieve the movant from disclosing in his motion some interest subjected to an unconstitutional procedure. (Compare *People v. McNeil*, 53 Ill. 2d 187, 290 N.E.2d 602, with *People v. DeFilippis*, 34 Ill. 2d 129, 214 N.E.2d 897.) When the matter arose during the course of trial, it appears that the premises were searched pursuant to the consent of the person in possession. We find no error in the trial court's dismissal of the defendant's pretrial motion to suppress evidence for want of allegations of standing.

The trial court also ordered the defendant to appear at a lineup at which time he was identified by Grewenig and Navarro. They also identified the defendant in open court during the course of the trial.

■■ Relying on *People v. Holiday*, 47 Ill. 2d 300, 165 N.E.2d 634, the defendant insists that because the occurrence witnesses had in fact identified the defendant from photographs while he was in custody, any identification by lineup thereafter was improper. We do not believe that the *Holiday* case supports this proposition since lineups are permissible even though a photographic showup is conducted while suspects are in custody. (*People v. Brown*, 52 Ill. 2d 94, 289 N.E.2d 452.) Defendant was identified from a display of several photographs and the procedure involved was such that the court could find that the identification from such photograph was not the result of an impermissibly suggestive procedure. On this appeal the defendant has limited his objection to a claim that he should not have been ordered to appear in a line up and makes no claim that the procedure, when considered as a whole, resulted in a substantial likelihood of irreparable misidentification of him. We find no error in the court's order requiring defendant to appear in a lineup.

This brings us to the defendant's contention the court erred in limiting his cross-examination of Boardman on the subject matter of the benefits which Boardman received because of his agreement to testify against the defendant. Another aspect of this problem is discussed in *People v. Graves*, 54 Ill. App. 3d ___, which involves the appeal of John Barton, appointed counsel for the defendant, from an order of the circuit court summarily finding him in contempt for asking questions about the penalty

for armed robbery. As is more fully discussed in the opinion leading up to Barton's fine for contempt, a colloquy took place outside the presence of the jury regarding the cross-examination of Boardman concerning the benefits which he received. At that time, the trial court ruled that the following questions could be asked: (1) did the witness know he could get substantially more than probation, and (2) what did the police tell the witness he could get as a possible sentence for the crime with which he was charged if he did not testify. After the colloquy, Boardman was asked by defendant's counsel "and you can't get probation for armed robbery, can you," to which objection by the State's Attorney was sustained. Defense counsel went on to ask "and as a matter of fact, you can get life in prison for armed robbery, can't you?" Based upon this violation of the trial judge's ruling, defense counsel was held in contempt and fined $50. Prior to the colloquy in which the trial judge issued his ruling on permissible cross-examination, Boardman was asked by defense counsel, "and what were you looking at if you didn't take that deal?" The prosecutor's objection to the question was sustained. When this question is compared with the court's view of what could appropriately be asked of the witness, it is clear that the court had reversed its earlier ruling and within its announced guidelines, the immediately foregoing question was appropriate.

Nevertheless, after defense counsel asked two questions of the accomplice which resulted in a summary ruling of contempt, no further questions were asked of the witness regarding the subject matter of the lenient treatment which he received.

■■ It is well settled that the testimony of a self-confessed accomplice should be viewed with caution even though such testimony is competent and may be sufficient to support a conviction. (*People v. Maggio*, 324 Ill. 516, 155 N.E. 373.) Where an accomplice is testifying in return for receiving lenient treatment, the nature and extent of the leniency are appropriately considered in determining the credibility of the witness' testimony. (*People v. Barr*, 51 Ill. 2d 50, 280 N.E.2d 708.) When the accomplice witness has received treatment which under other circumstances ought not to be revealed, it is properly disclosed when it represents lenient treatment afforded the witness in return for his testimony. (*People v. Norwood*, 54 Ill. 2d 253, 296 N.E.2d 852.) We believe defendant was entitled to have the jury made aware of the nature and extent of the leniency which Boardman received and that the procedure in the trial court prevented this from happening.

■■ However, we are not persuaded that the error of the trial court is reversible error. Usually the testimony of an accomplice is either the only testimony against the defendant or is of such a substantial nature that conviction could probably not be sustained in the absence of the

accomplice's testimony. In the instant case this is not true. The other evidence of defendant's guilt was overwhelming and consequently, we believe beyond a reasonable doubt that the error did not affect the conviction of the defendant.

The last issue raised by the defendant is his claim that only one judgment and sentence for armed robbery is appropriate. We do not agree.

In the recent case of *People v. King*, 66 Ill. 2d 551, 363 N.E.2d 838, the court announced the rule approving multiple convictions and sentences unless the offenses arose from the same physical act, in which event a conviction and sentence only for the more serious is permissible. The robbery in the instant case is substantially different from the act of breaking and entering with the intent to commit a theft. Even applying the independent motivation rule, it is our conclusion the offenses were independently motivated. See *People v. Williams*, 60 Ill. 2d 1, 322 N.E.2d 819; *People v. Swank*, 20 Ill. App. 3d 1079, 314 N.E.2d 32.

For the foregoing reasons the judgment of the circuit court of La Salle County is affirmed.

Judgment affirmed.

ALLOY, P. J., concurs.

Mr. JUSTICE BARRY, specially concurring:

Although I concur in the result reached by the majority, I can not agree with their reasoning concerning the issue of whether the defendant's cross-examination of Boardman was properly limited. I believe it was.

The majority seeks to extend the holding in *People v. Norwood* (1973), 54 Ill. 2d 253, 296 N.E.2d 852. In *Norwood* the Illinois Supreme Court concluded that "a defendant is entitled to have the trier of the fact informed as to any promises of leniency that may have been made to the witness, whether those promises related to the present offense or other pending charges." *People v. Norwood* (1973), 54 Ill. 2d 253, 257, 296 N.E.2d 852, 854.

When, in attempting to prove the State's promises of leniency to the witness, the cross-examination discloses to the jury the potential penalty facing the defendant if he is found guilty, a unique problem arises.

> "As a general rule the latitude to be allowed in cross-examination of witnesses rests largely in the discretion of the trial court. Such cross-examination should be kept within fair and reasonable limits, and it is only in a case of clear abuse of such discretion, resulting in manifest prejudice to the defendant, that a reviewing court will interfere." *People v. Halteman* (1956), 10 Ill. 2d 74, 86, 139 N.E.2d

286, 294. Accord, *People v. Gallo* (1973), 54 Ill. 2d 343, 297 N.E.2d 269.

Nevertheless, the trial court should afford a defendant the widest latitude to demonstrate the bias of the witness against him *(People v. Barr* (1972), 51 Ill. 2d 50, 280 N.E.2d 708) and to demonstrate that a witness has "a personal stake in the outcome of the trial" *(People v. Hughes* (3d Dist. 1977), 51 Ill. App. 3d 985, 987, 367 N.E.2d 485, 486).

In *People v. Dimond* (3d Dist. 1977), 54 Ill. App. 3d 146, 369 N.E.2d 383, even though we found no prejudice to the defendant warranting a reversal, this court indicated that a defendant may cross-examine the State's witness concerning the failure of the State to institute a probation revocation proceeding against the witness, who had been placed on probation pursuant to section 410 of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1975, ch. 56½, par. 1410). Yet to allow the witness in the case at bar to testify as to the limits of the statutory penalty he faced for the offense with which he was charged would have incidentally informed the jury of the possible penalty to be imposed upon the defendant if he is found guilty.

Although it may be harmless error to do so, it is a well recognized principal of law that the potential penalty facing the defendant ought not to be disclosed to the jury. *(People v. Cimino* (1970), 45 Ill. 2d 556, 257 N.E.2d 97; *People v. Klapperich* (1939), 370 Ill. 588, 19 N.E.2d 579.) The underlying rationale is not merely the lack of relevance to the issue of guilt, but also because of the possible prejudice to the defendant. Of course, just as the State's Attorney, in order to get a finding of guilt, may emphasize the lesser limit of the sentence for the offense with which the defendant is charged, the defense can emphasize the higher limit to shock the jury into a finding of not guilty or a conviction of a lesser included offense. Even if both arguments are fully presented to the jury, it would be difficult to predict to which party's benefit such an influence would accrue. Therefore, I believe the better rule to be for the trial court not to allow before the jury any evidence concerning the possible sentence the defendant may receive for the offense charged.

In the instant case, the trial court had to consider these somewhat conflicting rules of law. As a result, I could find no abuse of discretion in the trial court's limiting the defendant's cross-examination of the State's witness.