(No. 50369.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. HAROLD GRAVES.—(John L. Barton, Appellant.)

*Opinion filed January 12, 1979.*

RYAN, J., took no part.

John L. Barton, of Marseilles, for appellant.

William J. Scott, Attorney General, of Springfield (Donald B. Mackay, Melbourne A. Noel, Jr., and James A. Devine, of Chicago, of counsel), for the People.

Thomas P. Durkin, for *amicus curiae* Illinois Association of Criminal Defense Lawyers, Inc., of Chicago.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court:

John L. Barton, a licensed attorney and appointed counsel in a case against Harold Graves (see *People v. Graves* (1977), 54 Ill. App. 3d 1027) was found guilty of contempt for his conduct at the trial of the case in the circuit court of La Salle County. The appellate court, with one justice dissenting, affirmed (54 Ill. App. 3d 860), and

we allowed Barton's petition for leave to appeal under Supreme Court Rule 315 (65 Ill. 2d R. 315).

Barton was appointed to represent Harold Graves in a criminal prosecution in the circuit court of La Salle County. Graves and an alleged accomplice, Mickey Boardman, were both charged, *inter alia,* with armed robbery. Boardman agreed with the prosecution that he would testify on behalf of the State and against Graves, plead guilty to the lesser offense of burglary, and receive one year probation.

On cross-examination of Boardman, Barton sought to impeach Boardman by having the witness relate the facts pertaining to the agreement with the prosecution. Of particular concern for our purposes are those questions posed by Barton which sought to expose Boardman's knowledge of possible penalties for armed robbery. In reference to Boardman's agreement with the prosecution, Barton asked, "And what were you looking at if you didn't take that deal?" The State's Attorney made a general objection, which the court sustained on the ground that Graves was charged with the same offense as Boardman and "that the penalty ought not to be mentioned to the jury." The purpose of this ruling was to avoid prejudice to the State which might result if the jury were informed of the penalty that Graves might receive if convicted.

At the same time, however, the court acknowledged Barton's legitimate desire to "show that *** the witness got something in return for testifying." (See *People v. Norwood* (1973), 54 Ill. 2d 253.) Following a short side-bar discussion, the court determined that certain questions, as formulated, could be asked:

> "THE COURT: I will allow you to ask the question in this form, what did the police tell you you were going to get if you didn't testify?
> MR. YACKLEY [Assistant State's Attorney]: If I

could, could I suggest a question, did you know that you would get substantially more?

THE COURT: No, I think that is the first question you should ask, then the second one, what did the police tell you because that is what is in his mind."

Shortly thereafter, the court reiterated: "But first the preliminary question he suggested then the question that I say and I'll allow it to be asked and answered in that form because we have to know what is in his mind. That is what is important not what actually he could get. He might not even know." In response, Barton expressed his understanding of the court's ruling, stating, "I'm sure that is what he is going to testify, Judge."

At the close of these discussions, the witness was recalled and Barton resumed cross-examination:

"MR. BARTON: Mr. Boardman, you're charged with Armed Robbery in this case, aren't you?

A. Yes.

Q. And you can't get probation for Armed Robbery, can you?

MR. YACKLEY: Objection, he has gone beyond what the Court permitted here.

THE COURT: Sustained.

MR. BARTON: As a matter of fact, you can get life imprisonment for Armed Robbery, can't you?

MR. YACKLEY: Objection.

THE COURT: Take the jury out.

MR. YACKLEY: Objection, and I ask that the Court take some sanctions here.

THE COURT: Take the jury out. Mr. State's Attorney, state your motion.

MR. YACKLEY: I say that the Court ought to impose some sort of sanctions on counsel for the Defendant. He has clearly violated the ruling of the Court, he has deflagrantly [sic] violated, the life in prison, it's flagrant violation of the Court's ruling.

THE COURT: It's not only a flagrant violation, it's an absolute misstatement of the law. You kindly show me in Chapter 38 where you can get life in prison. You deliberately misstated the law to the jury, you deliber-

ately defied the Order of this Court not to mention the penalty. Finding you in wilful contempt of this Court and direct contempt and impose a fine of $50.00 this time."

In this appeal, Barton raises various arguments as to why the trial court's finding of contempt should be set aside. We find none of them to be of merit, and accordingly affirm the judgments of the circuit and appellate courts.

In *People ex rel. Kunce v. Hogan* (1977), 67 Ill. 2d 55, 59-60, quoting *In re Estate of Melody* (1969), 42 Ill. 2d 451, 452, contempt of court was defined as " 'conduct calculated to embarrass, hinder or obstruct a court in its administration of justice or to derogate from its authority or dignity, or bring the administration of law into disrepute.' " Where, as here, the conduct in question is committed in the presence of the court, neither notice nor pleading is necessary; the contemnor may be punished summarily "because the acts occur in the presence of the judge and presumably within his personal observation and knowledge." (*People v. Gholson* (1952), 412 Ill. 294, 299.) As a reviewing court, we determine whether there is sufficient evidence to support the finding of contempt (*People v. Richardson* (1947), 397 Ill. 84, 90) and whether the judge considered only facts within his personal knowledge. The latter requirement is peculiar to cases of direct contempt such as that involved here, and is warranted by the summary nature of direct contempt proceedings. *People v. Loughran* (1954), 2 Ill. 2d 258, 263.

Barton clearly failed to comply with the ruling of the court and propounded a series of questions which, by itself, impermissibly informed the jury of the seriousness of potential penalties facing the accused, Harold Graves. The finding of contempt was therefore proper, for, as the court stated in *Faris v. Faris* (1966), 35 Ill. 2d 305, 309, "If the court had jurisdiction of the subject matter and of

the parties to the proceeding, then its order must be obeyed until such time as it is set aside by the issuing or reviewing court."

We note also that, contrary to the claims of Barton, there is no constitutional infirmity in the trial judge's finding of contempt. When certain matters are withdrawn from the consideration of the jury, counsel may not, through question or comment, expose the jury to the very matters withdrawn from its consideration, and a summary conviction of contempt based on such conduct is not a denial of due process. (*Fisher v. Pace* (1949), 336 U.S. 155, 93 L. Ed. 569, 69 S. Ct. 425.) It is Barton's contention that the trial court's ruling was ambiguous and that due process prohibits imposition of punishment in this situation. Having reviewed the record, we find no basis for the argument. The judge clearly proscribed inquiry into possible penalties for armed robbery and twice formulated the questions that could be asked. Barton expressed his understanding of the judge's ruling, but shortly thereafter asked questions which not only deviated from those formulated by the court, but more importantly violated the prohibition specifically set out.

Because we have determined that the trial judge's ruling was not ambiguous, we need not address Barton's argument that a warning is essential to establish the requisite clarity in a trial judge's ruling.

Barton finally contends that the trial judge's disposition of the matter had a chilling effect on the accused's right to present relevant evidence, citing language in the appellate court opinion in *People v. Graves* (1977), 54 Ill. App. 3d 1027, 1033, which disposed of Harold Graves' appeal from a judgment of conviction. The appellate court there held that the effect of the trial court procedure which resulted in the finding of contempt was to impermissibly prevent the jury from being apprised of the deal which Boardman had made with the prosecution. The

court also held that the error was harmless. (54 Ill. App. 3d 1027, 1033-34.) We express no opinion on the appellate court's holdings in this regard, but merely hold that Barton may not seek redress for injury resulting from an alleged violation of the rights of those he represents and to which he himself is not entitled. In the usual case, one may not obtain relief for the infringement of rights which he does not personally hold. Only in exceptional situations may an individual successfully complain of a violation of the rights of others. (See, *e.g., Grayned v. City of Rockford* (1972), 408 U.S. 104, 114, 33 L. Ed. 2d 222, 231, 92 S. Ct. 2294, 2302 (first and fourteenth amendment overbreadth challenge).) We see no special circumstances in the case now before us which warrant adoption of a similar exception to accommodate the argument made by Barton.

The judgments of the circuit and appellate courts are affirmed.

*Judgments affirmed.*

MR. JUSTICE RYAN took no part in the consideration or decision of this case.