THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee *v.* ROY ALLEN, Defendant-Appellant.

(No. 59587;

First District (5th Division)—April 11, 1975.

James J. Doherty, Public Defender, of Chicago (Dorothea Kaplan, William D. Trude and Richard D. Kharas, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Patrick T. Driscoll, Jr. and Marcia B. Orr, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE LORENZ delivered the opinion of the court:

Following a jury trial, defendant was found guilty of rape, deviate sexual assault, aggravated battery and aggravated battery with a deadly weapon in violation of sections 11—1(a), 11—3, 12—4, and 12—4(b)(1) of the Criminal Code (Ill. Rev. Stat. 1971, ch. 38, pars. 11—1(a), 11—3, 12—4 and 12—4(b)(1)). He was sentenced to concurrent terms of 8 to 24 years for rape and deviate sexual assault. No sentences were imposed on the battery charges.

On appeal, defendant contends: (1) that he was not proved guilty beyond a reasonable doubt; (2) that his due process rights were violated because he did not receive a fair trial, (3) that the trial court erred in entering judgment on the battery charges; and (4) that the sentences imposed were excessive.

The following pertinent evidence was adduced at trial.

For the State:

*Joyce Asberry, the complaining witness*

On the afternoon of June 24, 1972, while she was picking up a pair of suede boots at a shoe store, she met defendant who identified himself as "DeShon." After talking to him for about an hour and giving him her phone number, she left. At about 9 P.M., he called and asked her out. After a brief conversation, she asked him to call back. About 10 P.M. he called again but she did not go out with him that evening.

At 8 P.M. on June 26, 1972, defendant again called and asked if she

wanted to go for a 15-minute ride to listen to some tapes. She asked him to call back later. At 10:30 P.M. defendant called to renew his offer. This time she accepted. He told her he would meet her downstairs and described his car as a green Mustang, raised up in the back like a racing car, with primer on the front.

When defendant arrived, he was driving a green Mustang just as he had described. It had a black interior, a stick shift with a white knob, a tape deck under the driver's side of the dash board, and a sticker on the back window. It had primer on it and was three different colors in the front.

At her request, defendant drove her to visit a friend at 79th and Aberdeen and waited for her in the car. When she returned they drove toward the lake. As they listened to a tape of Issac Hayes, defendant mentioned that he worked for United Parcel training drivers and she talked about school. They parked on the lakefront at 43rd Street. Defendant asked her to walk with him by the lake; but when she refused, defendant went alone.

Defendant sat in the driver's seat when he returned. She was sitting in the front passenger's seat. Defendant put his arm around her and kissed her. For a moment he took his arm away, but he put his arm around her again as he kissed her for a second time. Defendant then said: "Strip or I'll kill you." She then discovered that defendant was holding a knife to her neck. He repeated his demand to strip.

She put her right hand between the knife and her throat. As she pushed the knife away, she cut her hand. At the same time, with her left hand she opened the car door, and dove out of the car screaming. He held onto her jacket and followed her out of the car. He then struck her many times with a stone and told her: "Be quiet or I'll kill you. I have done this before and I will do it again. Be quiet or I'll kill you."

He ripped off her pants, tore her body shirt, and pulled down her panties and panty hose. He inserted his penis into her vagina for a moment, and then put it in her mouth, saying: "I'll kill you if you bite it." He then re-entered her vagina with his penis and climaxed. Afterwards he got up, told her to put on her pants and to get her shoes which he said were in front of the car. He then started the car. She put on her pants, gathered her clothes and shoes which were at the side of the car, and ran from the scene. He pursued her in the car. As she ran away from the lake, she met two boys on bicycles who helped her to a phone booth. Defendant drove away.

When the police arrived, they took her to the hospital where she received over 100 stitches and where they took a pap smear. She told the

officers that her assailant was dark, 5'7" tall, clean-shaven, and wearing a nice-size natural. She also told them his name was "DeShon" and she described his car.

On July 10, 1972, she attended a lineup and identified defendant as her assailant. Afterwards she identified the car.

*Elijah Miller*

He was employed at Joe's Shoe Shine Parlor on June 24, 1972. A customer, who had come to the store to have his shoes shined and his suede shoes cleaned, spoke to Joyce Asberry. He was 6 feet tall, clean-shaven and was wearing a full natural. Miller identified defendant as that customer and observed defendant's car two or three times while defendant was in the store. The car was a green Mustang having several colors in front, a black interior, and a tape deck. On direct examination, he stated that the photograph of defendant's car showed the tape deck; but on cross-examination, admitted that it did not. A man defendant had identified as his brother was waiting in the car.

*Officer Elmer Keen*

He is a Chicago Police Officer. In the early morning hours of June 27, 1972, he and his partner responded to a radio call regarding a rape. Although he did not see anyone with a bike, they found Joyce Asberry near 47th Street and the Outer Drive. Both her head and her hand were bleeding and she complained of having been raped. As they took her to the hospital, she gave them a description of her assailant and his car. She described him as a male Negro, about 22 years old and about 5'7" or 5'8" tall who weighed 160 to 170 pounds, wore a natural, and was clean-shaven except for a beard. Although he did not include it in his report, she told him her assailant's name was "DeShon." She described the car as a two-door 1965 to 1967 Mustang with a primer on the front.

*Investigator Banahan*

He is one of the Chicago police officers who arrested defendant. On July 10, 1972, he noticed a 1969 Mustang similar to the car involved in the rape investigation. After defendant told him he worked for United Parcel, he arrested him and advised him of his rights. Defendant stated that while his car was stolen it was involved in an accident. The officer drove defendant's car to the police auto pound. It had a black interior, a stick shift with a white knob, and brackets underneath the driver's side of the dashboard which could accommodate a tape deck.

*Investigator Paul Pietrzak*

He is one of the Chicago police officers who investigated the rape of Joyce Asberry. She told him that her assailant attempted to insert his penis into her vagina but could not; that he then placed his penis in her mouth; and that after removing it from her mouth placed it in her

vagina. After defendant was arrested and advised of his rights, he was placed in a lineup where he was identified by Joyce Asberry. After the lineup, she also identified his car. The car had brackets sufficient to accommodate a tape deck.

The parties stipulated that were the examining doctor to testify he would state that Joyce Asberry received multiple lacerations about the head requiring stitches; that she suffered trauma in the hand; but that there was no trauma, lacerations or bleeding in her pelvic area.

*Sioux Vargas*

He is a medical student who under supervision examined Joyce Asberry. She had lacerations on her head and hands, but there were no signs of trauma in the pelvic area.

*Mary Ann Mohan*

She is a microanalyst for the Chicago Police Department. She performed tests on certain exhibits related to the instant case. Blood was found on panties belonging to Joyce Asberry and human spermatozoa was found on a smear related to the case.

For the defendant:

*Dorothy Allen*

She is defendant's wife. On June 26, 1972, defendant came home at 11 or 11:30 P.M., ate dinner, went to bed and did not again leave the house on that day. He has always had a beard and mustache and has never been known as "DeShon." He owns a 1969 Mustang which has primer on it because it was stolen and involved in an accident. He did not have a tape deck on the 26th of June, but he has one now which he got when he was visiting his mother over the 4th of July. He does not own an Issac Hayes tape or suede shoes. On June 26, 1972, he was unemployed but he had worked for United Parcel.

*Doris Blissett*

She is defendant's cousin who was visiting in defendant's home on June 26, 1972. She corroborated Dorothy Allen's testimony regarding defendant's actions on June 26, 1972.

*Roy Allen on his own behalf*

He is 6'1" tall and weighs 189 pounds. He has had a beard since 1967. On June 26, 1972, he arrived home at 11 or 11:30 P.M., ate dinner, and went to bed. He does not know Elijah Miller, has never been to Joe's Shoe Shine Parlor, did not meet Joyce Asberry there, did not rape her, and has never been known as "DeShon." He owns a green Mustang with a black interior, a white gear shift knob, and a sticker in the window. The car has red primer on the front. It now has a tape deck, but did not have one on June 26, 1972. He does not own an Issac Hayes tape or suede shoes. He has no brother. He worked 1 month for United Parcel

training drivers; but was laid off. He denied being discharged for falsifying his employment application. At the time of trial he was employed at a parking lot. He didn't tell his employer, William Lynch, but he told his supervisor that he had to come to court because his father had been charged with bigamy.

For the State on rebuttal.

*Joseph Dasta*

He is loss-prevention manager at United Parcel. Although he was not present at the time defendant was fired, defendant was fired because he falsified his job application.

*William Lynch*

He is the manager of a parking garage. Defendant told him he would not be at work because he had to be in court regarding a charge of bigamy against his father.

*Joyce Asberry, the complainant*

In addition to reiterating parts of her prior testimony, she stated that defendant was wearing brown suede shoes on the day she met him.

## OPINION

Defendant first contends that he was not proved guilty beyond a reasonable doubt. He argues that the evidence linking him to the instant crimes was vague, doubtful, and uncertain.

■■ Identifications which are vague, doubtful, and uncertain will not support a conviction. (*People v. O'Hara*, 332 Ill. 436, 458-459, 163 N.E. 804, 812.) However, the positive identification of one credible witness is sufficient to convict, even in the face of contrary alibi testimony, and questions regarding the credibility of witnesses are to be resolved by the trier of facts. (*People v. Thompkins*, 19 Ill.App.3d 674, 312 N.E.2d 380.) Minor omissions or discrepancies in descriptions do not necessarily affect the validity of an identification, although they may affect the weight the trier of facts gives such evidence in weighing the credibility of witnesses. *People v. Bennett*, 9 Ill.App.3d 1021, 293 N.E.2d 687.

Here ample and positive evidence links defendant to the instant crimes. Joyce Asberry identified defendant at trial and in the lineup a few days after the crime. She had ample opportunity to observe defendant both on the day she met him and on the night of the crimes. Her story was corroborated by Elijah Miller who also identified defendant in court. Furthermore, she identified defendant's car and this testimony was again corroborated by Miller. Defendant admitted owning a car substantially the same as the one involved in the instant crimes and also admitted that he had been employed at the place the assailant had said he was employed.

■■■ As in many cases, the instant case includes a few discrepancies in the testimony. Here they relate primarily to defendant's height, weight and facial hair and to the tape deck and the primer on defendant's car. Miller described the customer as 6′ tall; defendant described himself as 6′1″ tall; and the complainant described her assailant as 5′7″ tall. The complainant and Miller both said the customer had a full natural and was clean-shaven; Officer Keen said the complaining witness had told him the assailant was clean-shaven except for a beard; defendant and his wife said defendant had had a beard for several years; and the lineup photo shows defendant with a small goatee. Both the complainant and Miller testified that the car had a tape deck before July 4, 1972; but defendant and his wife testified that defendant had no tape deck before that time. Furthermore, there was some discrepancy regarding the color of the primer on the car. However, these discrepancies, together with numerous similarities, presented questions of fact for the jury which the jury resolved against defendant. In the circumstances of this case, we cannot say that defendant was not proved guilty beyond a reasonable doubt.

Defendant next contends that his due process rights were violated because he did not receive a fair trial. He argues: (1) that the identification evidence against him was the result of suggestive police procedures; (2) that inflammatory and prejudicial evidence was presented; (3) that he was prejudiced by improper cross-examination, comments, and rebuttal evidence; and (4) that the trial court erred in instructing the jury regarding circumstantial evidence.

■■ Defendant argues that the identification evidence against him was the result of suggestive police procedures. Police procedures which suggest that someone is the perpetrator of a crime are improper. (*People v. Blumenshine*, 42 Ill.2d 508, 250 N.E.2d 152.) Here, defendant complains that both the complainant's and Miller's identification of him was the product of a suggestive lineup. He argues that it was suggestive because he was the only person having a full natural and because only one person was clean-shaven. Clearly, defendant, who has a goatee, was not prejudiced by the fact that one person had no facial hair. Moreover, having examined a photograph of the lineup, we cannot say that it was arranged in such a way that defendant would be identified as the perpetrator of the crimes if he were not in fact the perpetrator of the crimes.

Defendant next argues that inflammatory and prejudicial evidence was presented against him. He argues that the following evidence should not have been presented: (1) the complaining witness' testimony that during the course of the crimes defendant had said: "I have done this before and I will do it again"; (2) the references to the name "DeShon"; (3) Mohan's

testimony regarding blood on the complainant's panties; and (4) the use of black and white photographs of defendant's car.

■■ Although evidence of little probative value which is presented to arouse the prejudices of the jury should be excluded (see, *e.g., People v. Nickolopoulos,* 25 Ill.2d 451, 185 N.E.2d 209), evidence which is relevant to issues before the court is admissible notwithstanding prejudicial effect it may have on a defendant. (*People v. Jenko,* 410 Ill. 478, 482, 102 N.E.2d 783, 785.) Furthermore, where the guilt of a defendant is overwhelmingly established by competent evidence, errors in the admission of evidence may not justify reversing a conviction. (*People v. Scott,* 52 Ill.2d 432, 442, 288 N.E.2d 478; 484.) Such errors do not necessarily deprive a defendant of a fair trial.

■■ First, the complainant's testimony regarding defendant's statement to her was admissible. The statement, taken in context, was probative of defendant's actions in committing the instant crime and was therefore relevant. It was not hearsay because it was not presented to prove the truth of the matters asserted therein (that defendant had committed other crimes); but even if it were hearsay, it would fall within certain exceptions to the hearsay rule (for example, the declaration of present mental state exception.) Moreover, defendant did not object to this statement at the time it was presented and thus, even if it were inadmissible, the trial court was not called upon to exercise its discretion in determining whether it should be excluded.

■■ Second, for similar reasons, the references to the name "DeShon" were not improper. According to the complaining witness, "DeShon" was the name defendant gave her and was the only name she knew him by until after he was arrested. This evidence was relevant. Moreover, since it was not presented to prove that defendant's name actually was "De-Shon" or to prove that defendant had a criminal record, we cannot say that it was either hearsay or prejudicial to admit such evidence.

■■ Third, defendant properly complains that Mohan's testimony regarding blood stains on the complainant's panties was irrelevant. There was no evidence that complainant was bleeding in her pelvic area. In fact, the evidence was that she was not bleeding there. It was error to admit this evidence. However, in this case, where the evidence of guilt was overwhelming and major emphasis was not placed on this evidence, we believe the error was harmless. *People v. Scott,* 52 Ill.2d 432, 442, 288 N.E.2d 478, 484.)

■■ Also, the use of black and white photographs was not inflammatory. Defendant states that this evidence confused the jury, but we cannot agree. The photographs were properly identified by the witnesses and

accurately portrayed the car. We cannot say that defendant was deprived of a fair trial because this evidence was admitted against him.

Defendant argues that he was prejudiced by improper cross-examination, comments, and rebuttal evidence. Specifically, he complains: (1) that he should not have been cross-examined regarding his failure to testify at the preliminary hearing; (2) that he should not have been cross-examined regarding the identities of certain people with whom he spent the afternoon of June 26, 1972, and that no comment should have been made regarding their failure to testify; and (3) that no attempt should have been made to impeach him on collateral matters.

■■ Defendant first complains that he should not have been cross-examined regarding his failure to testify at the preliminary hearing. The scope of cross-examination, including cross-examination of a criminal defendant, is a matter which lies largely within the discretion of the trial court. (*People v. Clark*, 9 Ill.App.3d 998, 293 N.E.2d 666.) Here, although the prosecutor attempted to examine the defendant regarding his failure to testify at the preliminary hearing, the trial judge sustained defendant's objection and specifically instructed the jury:

> "Ladies and gentlemen, I have previously instructed you during the selection, and I will now instruct you again. In regard to the question of the State's Attorney, the defendant may or may not take the stand and testify in this case. No presumption of guilt arises if he does not testify. The defendant is not required to prove his innocence."

On these facts, we cannot say that defendant was deprived of a fair trial by this questioning.

■■ Defendant next complains that he should not have been cross-examined regarding the identities of certain people with whom he spent the afternoon of June 26, 1972, and no comment should have been made regarding their failure to testify. In view of the wide scope of permissible cross-examination, defendant's failure to object to the prosecutor's cross-examination, and the fact that defendant's direct testimony first introduced the subject, we cannot say that the cross-examination was improper. Furthermore, in light of *People v. Moore*, 55 Ill.2d 570, 304 N.E.2d 622, the prosecutor's passing reference to the failure of these witnesses to testify which was unobjected to by defendant was not reversible error, especially where, as here, the evidence against defendant was overwhelming.

■■ Finally, defendant complains that no attempt should have been made to impeach him on collateral matters. His major objections are that rebuttal evidence was presented regarding the statement he made

to his employer concerning his absence from work and regarding the termination of his employment at United Parcel. Rebuttal evidence is evidence which explains, repels, contradicts, or disproves evidence produced by the defendant in his case in chief. (*People v. Bell*, 328 Ill. 446, 159 N.E. 807.) Rebuttal evidence may properly contradict defendant's testimony as to a material issue, but is improper as to collateral matters. (*People v. McGhee*, 20 Ill.App.3d 915, 922, 314 N.E.2d 313, 319.) Furthermore, we note that in *People v. Nuccio*, 43 Ill.2d 375, 253 N.E.2d 353, the supreme court ruled that the State must substantiate on rebuttal insinuations it had made upon cross-examining the defendant.

In the instant case, the rebuttal evidence regarding the statement he made to his employer concerning his absence from work was not required to prove defendant guilty of the charges before the court. However, this evidence essentially substantiated what defendant had said on cross-examination and cannot therefore be viewed as prejudicial. Also, the rebuttal evidence regarding the termination of defendant's employment at United Parcel was required in view of *Nuccio*.

Defendant also argues that the trial court erred in instructing the jury regarding circumstantial evidence. He states that this instruction misled the jury since only direct evidence was presented at trial. We see no merit in this contention. We cannot say that defendant was deprived of a fair trial on this account.

Defendant next contends that the trial court erred in entering judgment on the battery charges notwithstanding the fact that the trial court did not sentence defendant on those charges. The State has confessed error on this point and on the strength of *People v. Lilly*, 56 Ill.2d 493, 309 N.E.2d 1, we agree that the judgments entered on those charges must be reversed.

■■■■ Defendant finally contends that the sentences imposed were excessive in view of the fact that defendant had no prior convictions. However, sentencing is a matter which falls within the discretion of the trial court. The sentences here were within the statutory limits, and the crimes involved were particularly brutal. In these circumstances we cannot say that the sentences were excessive.

Therefore, the judgments on the charges of rape and deviate sexual assault are affirmed and the two judgments for aggravated battery are reversed.

Affirmed in part; reversed in part.

DRUCKER and SULLIVAN, JJ., concur.