THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LARRY A. CHAPIN, Defendant-Appellant.

Third District    No. 79-897

Opinion filed June 9, 1980.

Robert Agostinelli and Karen S. Szpajer, both of State Appellate Defender's Office, of Ottawa, for appellant.

Thomas J. Homer, State's Attorney, of Lewistown (John X. Breslin and Kenneth A. Wilhelm, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:

The defendant Larry Chapin appeals from his conviction of intimidation (Ill. Rev. Stat. 1977, ch. 38, par. 12—6). After the jury verdict of guilty, the court sentenced the defendant to a term of three years in prison. On appeal, the defense raises two issues: (1) whether the court erred in refusing a defense motion for a mistrial and in allowing into evidence the victim's testimony that the defendant told him he "just got out of the pen," and (2) whether the court erred in not granting a new trial on the basis of the prosecutor's reference, in closing argument, to probation as a potential sentence.

The record discloses that on May 4, 1979, John Obery was driving from Havana to his home in Peoria when he heard a squeal behind him and saw a car swerve and hit a guard rail. Obery stopped, but the other car proceeded on past him. A mile or so down the highway, Obery observed the damaged auto stopped on the side of the road and the occupants waving to him to stop. He stopped, and the three men approached his auto and ordered him out. The defendant Larry Chapin then told Obery that he, Obery, had caused the damage to defendant's

auto by applying his brakes in front of it. Obery informed Chapin that he would pay for the damages he caused. During the ensuing conversation, Obery was grabbed by the collar, at one point, by the defendant, Larry Chapin. Also, during the exchange, Obery informed the men he had some money in a checking account.

Thereafter, Obery and the oldest of three men proceeded in Obery's car toward his home, while the other two men, including the defendant, Chapin, followed in the other car. Later, at a junction stop, Larry Chapin changed places with the oldest man, Eldon Rains, and Chapin and Obery proceeded together in Obery's auto. During that ride the defendant told Obery, "No monkey business. I'll blow your fucking head off, because it don't make a bit a difference to me where I go, because I just got out of the pen." Obery testified that he noticed a bulge in Chapin's shirt which he believed to be a gun. Before arriving in Peoria, Obery and Chapin stopped at a tavern parking lot in Banner, Illinois, where the damaged auto was parked. Beer was purchased, and Obery and Chapin then continued on to Peoria, with Chapin ordering Obery to have a beer.

When they arrived at Obery's residence, all three men followed him into the house, where they met his granddaughter. The defendant and one other man followed Obery to his bedroom where he got his checkbook. Chapin told Obery to make the check payable to his brother, Ron Chapin. Obery then gave the check to the defendant. The men left, with Rains telling Obery and the granddaughter he would kill them if they went to the police. After they left, Obery picked up his wife from work and deposited money in his checking account. He testified he did this, fearful of harm to his family if he did not. Shortly thereafter, however, he decided to contact police. Three days later he identified the defendant Larry Chapin, in a lineup, as one of the men who had threatened him.

While during trial cross-examination, the defense was able to elicit from Obery the admission from him that it was possible the older man had communicated the threat, on re-direct, after calming down, Obery again expressed no doubt that it was the defendant, Larry Chapin, who had threatened him in the car. In addition to Obery's testimony, the State introduced into evidence a tape recording of a statement by the defendant, Chapin, to the police. In that statement, Larry Chapin indicated that Obery offered to pay for the damages, and they followed him to make sure. The defendant admitted switching places with the older man and riding with Obery part of the way. He admitted telling Obery that he would "knock his fucking head off," although, in the statement, he asserts that the threat was made while the cars were both stopped after the accident. The defendant stated that his brother and the other man threatened Obery with harm, with Rains threatening to kill him if he went to the police.

The first issue raised by the defense addresses comment by the prosecutor in his opening statement, on the defendant's reference to having just gotten "out of the pen" and, also, the introduction of Obery's testimony to that effect during his direct examination. In his opening statement to the jury, the prosecutor informed them that the evidence would show that while riding in Obery's car, the defendant told Obery:

> "Any monkey business out of you, and I'll blow your fucking head off. It means nothing to me. I just got out of the pen."

Objection and motion for mistrial, based on the mention of prior crimes, was made by the defense. The defense argued that the statement was a reference to other crimes and was improper and prejudicial. The prosecution argued its admissibility as part of the *res gestae*. The court denied the motion for mistrial. Later on, it allowed into evidence Obery's testimony in which he quoted the defendant in his reference to having just gotten out of prison.

■■ The general rule is firmly established that evidence of prior convictions or other crimes is inadmissible and incompetent evidence, prejudicial to the defendant. (*People v. Goodwin* (1979), 69 Ill. App. 3d 347, 387 N.E.2d 433; *People v. Hughes* (1977), 51 Ill. App. 3d 985, 367 N.E.2d 485.) The obvious basis for that rule of excluding such evidence is its suggestion to the jury that the defendant has criminal tendencies, which suggestion may affect their determination of his guilt or innocence in the case before them. (*People v. Gregory* (1961), 22 Ill. 2d 601, 177 N.E.2d 120.) In *Goodwin,* we found reversible error where an arresting officer testified that the defendant asked to be let go, because he didn't want "to go back to prison." (See *People v. Hawkins* (1972), 4 Ill. App. 3d 471, 281 N.E.2d 72.) Those cases, however, did not involve exceptions to the general rule of inadmissibility. The exceptions were set forth in *People v. McDonald* (1975), 62 Ill. 2d 448, 455, 343 N.E.2d 489:

> "Evidence which tends to prove a fact in issue is admissible though it may be evidence showing that the accused has committed a crime other than the one for which he is being tried, and evidence which goes to show motive, intent, identity, absence of mistake or *modus operandi* is admissible though it may show the commission of a separate offense."

Under the exceptions, references by a defendant to his prior prison time have been admitted into evidence as relevant to the defendant's intent (*People v. Smith* (1972), 6 Ill. App. 3d 259, 285 N.E.2d 460) and as probative of the defendant's actions in committing the crime (*People v. Allen* (1975), 27 Ill. App. 3d 1054, 327 N.E.2d 387). In *People v. Smith* the court states:

> "The fact that the answer also suggested defendant's conviction of another crime did not make it inadmissible. Evidence that proves

commission of an unrelated crime is admissible to show, by immediate inference, malice, deliberation, ill-will or the intent required for the offense charged. [Citation.] When evidence is admissible on other grounds, it is not objectionable because it also discloses other offenses." 6 Ill. App. 3d 259, 263.

In the instant case, the defendant was quoted as threatening John Obery by saying to him:

"No monkey business. I'll blow your fucking head off, because it don't make a bit of difference to me where I go, because I just got out of the pen."

The defense objects to only the last clause with its reference to the penitentiary and argues the evidence was highly prejudicial and only cumulative evidence for the State. We disagree.

■■ In this case, the defendant's threat to kill Obery was emphasized by his reference to having just gotten "out of the pen." The defendant used that to indicate to Obery his seriousness in making the threat and his willingness to follow through on it. As such, the reference is directly relevant to the defendant's intent to make Obery submit to his will and do what he was told. It is direct evidence of his intent and not merely cumulative evidence of the threat. "I'll blow your head off" is the threat to inflict physical harm, but the reference to the penitentiary, in its context here, is relevant as well to another essential element of the offense of intimidation, intent to cause another to perform or omit to perform actions. (Ill. Rev. Stat. 1977, ch. 38, par. 12—6.) It was properly admitted by the court, and the mistrial was properly denied.

The defense reliance upon the recent supreme court opinion in *People v. Lindgren* (1980), 79 Ill. 2d 129, 402 N.E.2d 238, is misplaced. There the court held that evidence of other crimes ought to have been excluded, concluding that it was not relevant to an essential issue in the case or the crime charged. While it had some relevance to the defendant's time and space proximity to the commission of the offense charged, the court found that the proximity had already been established by other evidence and the other crimes evidence was only cumulative. In this case, the reference to other crimes was made by the defendant as an integral part of his intimidation of the victim, John Obery. The reference went to an essential issue of the charge.

■■ ■ The other issue raised by the defense is whether the conviction ought to be reversed because of the State's Attorney's reference to probation as a possible sentence in his closing argument. The State's Attorney, in rebuttal, stated:

"Well, Mr. Hanna tells you that his client stands here charged with what he said, Class 3 felony, as though that should somehow weigh upon your mind as to what the charge is. Well Ladies and

Gentlemen, so there is no misunderstanding about this, the Judge and the Judge alone determined what punishment, if any, in the event of a conviction is to be inflicted upon this man; and the Judge has the whole gambit as to what he might do—probation * * *."

The defense counsel objected to the reference to sentences and his objection was sustained. It is, of course, improper for counsel to argue the effect of the verdict when the jury is not involved in fixing the punishment. (*People v. Galloway* (1963), 28 Ill. 2d 355, 362, 192 N.E.2d 370.) However, such references, though improper, do not necessitate reversal in all cases. The supreme court in *People v. Cimino* (1970), 45 Ill. 2d 556, 561, 257 N.E.2d 97 (Schaefer, J., dissenting), reiterated the applicable rule in such situations:

" 'Where it appears that the improper remarks do not constitute a material factor in the conviction, or that they are of such a minor character that prejudice to the defendant is not their probable result, the verdict will not be disturbed.' "

The Illinois Supreme Court went on to emphasize that the trial court is in the best position to determine the effect, if any, upon the jury. 45 Ill. 2d 556, 561. See *People v. Rodriguez* (1978), 58 Ill. App. 3d 562, 570, 374 N.E.2d 904.

In the instant case, the reference to sentencing was a brief and unrepeated reference to probation as one of the options the trial judge had in sentencing. Immediate objection was made by the defense and sustained by the court. The record indicates that the trial court was again faced with the question of the remark's prejudicial impact by reason of the defense post-trial motion. It is apparent from his rulings that the trial judge, who was in the best position to determine the effect of the comment on the jury, did not find sufficient impact and prejudice to justify a new trial. We find no basis in the record to set aside his determination on that issue. (*People v. Cimino* (1970), 45 Ill. 2d 556, 257 N.E.2d 97; *People v. Rodriguez* (1978), 58 Ill. App. 3d 562, 374 N.E.2d 904.) We find, as the trial court implicitly found, that the remark did not play a material part in the defendant's conviction of intimidation and that it was of such a minor character that prejudice was not the probable result. While the remark indicated that probation was within the judge's sentencing options, it didn't assert the likelihood of that sentence. It was improper, uninvited comment, nevertheless, but it was only a mild, brief, unrepeated comment to which objection was immediately sustained.

The defense asserts that the credibility of the State's key witness, John Obery, and through him its entire case, was seriously in question due to inconsistencies in his testimony, and that given this weakness of the State's case, the impact of the improper remark, defendant contends, may have made a difference in the jury's determination. In support of its

argument, the defense points to the fact that under cross-examination Obery admitted it was possible the oldest of the three men had threatened to shoot him, while riding in the car with him, and to the fact that police recollections of Obery's statements were inconsistent, at times, as to who made which threat and at what point in time. What the defense overlooks in its argument are the strong points of the State's case. Three days after the incident, Obery picked the defendant Larry Chapin out of a lineup as the man who made the threats against his life. At trial, Obery identified Chapin as the man who threatened to blow his head off. While shaken somewhat by cross-examination, on redirect examination, after calming down, Obery testified he had no doubt that it was the defendant Chapin who threatened him in the car.

The other largely uncontradicted evidence in the record indicates the defendant's participation in the crime. It was the defendant who told Obery he would have to pay for damages. It was the defendant who accompanied Obery most of the way to his home and, when there, it was he who accompanied him into the bedroom to get the checkbook. It was the defendant who informed Obery to whom the check should be made and it was to the defendant that Obery gave the check. Also, the statement given to the police by the defendant contained Chapin's admission that he did threaten to "knock his fucking block off." The statement also indicated that the other men made threats as well. We find that the evidence presented was fully sufficient for the jury's determination of guilt and that the brief mention of probation as a possible sentence did not play a material part in the jury's determination of guilt. As indicated earlier, we find no reason in the record to reverse the trial court as to whether sufficient prejudice resulted from the improper remark to justify a new trial.

Accordingly, the judgment of the Circuit Court of Fulton County is affirmed.

Affirmed.

STENGEL and BARRY, JJ., concur.