THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
BRUCE ARMSTRONG, Defendant-Appellant.

Fourth District   No. 4—88—0191

Opinion filed October 26, 1988.

Daniel D. Yuhas and Judith L. Libby, both of State Appellate Defender's Office, of Springfield, for appellant.

Tim P. Olsen, State's Attorney, of Jacksonville (Kenneth R. Boyle, Robert J. Biderman, and Linda Cullom, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE SPITZ delivered the opinion of the court:

Following a jury trial in the circuit court of Morgan County, defendant Bruce Armstrong was found guilty of murder, home invasion, and armed robbery. (Ill. Rev. Stat. 1985, ch. 38, pars. 9—1(a)(1), 12—11, 18—2.) Judgment was entered on the verdict and the defendant was sentenced to concurrent terms of imprisonment of 50 years, 20 years, and 20 years, respectively.

In this appeal, defendant raises two issues. The first issue is whether defendant was denied the effective assistance of counsel because the attorney appointed as the public defender to represent defendant at the trial allegedly collected $15,000 from defendant's mother to represent defendant.

Defendant admits there is no *per se* conflict of interest. Defendant also admits there is no actual conflict of interest demonstrated in the record. The record does not disclose defendant's mother would have benefitted by defendant's conviction. There is also nothing in the record which indicates defendant was unaware of or disapproved of the fee arrangement. Moreover, the trial court appointed substitute counsel for post-trial motions, and post-trial counsel was unable to establish from the affidavits of defendant's mother and brother that those persons had knowledge of facts which would have been admissible as evidence to exculpate defendant. Nor does the record require a characterization of defense trial counsel's performance as either actual in-

competence or as being of such low caliber as to reduce the trial to a farce or sham.

■ Nevertheless, defendant demands a new trial because trial counsel's conduct was "reprehensible" and "unethical." The professional ethics of defendant's trial counsel is a matter for the Attorney Registration and Disciplinary Commission (107 Ill. 2d Rules 751 through 774). Such out-of-court activity in no way requires a reversal of defendant's convictions in the absence of a showing of actual prejudice to defendant.

■ In support of his contention that reversal is warranted by counsel's activities in accepting the fee, defendant cites *People v. Williams* (1982), 93 Ill. 2d 309, 444 N.E.2d 136, *cert. denied* (1984), 467 U.S. 1218, 81 L. Ed. 2d 371, 104 S. Ct. 2666. *Williams*, however, is distinguishable for several reasons. First, Williams alleged numerous inactions on the part of his trial counsel, including, but not limited to failure to move to suppress evidence seized from defendant's car, failure to object to testimony about a Canadian hair comparison study, failure to object to evidence defendant alleged was designed to show one of the codefendants had accused her codefendants, failure to object to information given to the jury about the manner of reviewing the verdict, failure to object to evidence of good character of decedent, failure to demand a full evidentiary hearing to discover certain written statements allegedly made by a witness to the crime within a few days of the murder, and failure to move for a new trial. Secondly, *Williams* involved a capital punishment trial, with defendant's counsel defending three clients before two juries, simultaneously. Third, at the time the supreme court decided *Williams*, the court had disbarred defendant's trial counsel as a result of an unrelated proceeding for neglecting legal matters entrusted to him, for committing acts prejudicial to the administration of justice, intentionally causing damage and prejudice to his clients, and commingling and converting funds. In *Williams*, the supreme court reasoned that although those errors alleged were not such plain error as to warrant review where no motion for new trial was filed and although the alleged failures on the part of trial counsel were perhaps errors in judgment which do not establish incompetency, in light of the disciplinary action the court could not characterize the failure of counsel to make the motion to suppress, et cetera, as professional misjudgment. Therefore, *Williams* is clearly distinguishable from the case at bar wherein the record discloses nothing to demonstrate defendant was actually prejudiced and prevented from receiving a fair trial as a result of trial counsel accepting the fee from defendant's mother.

The second issue raised is whether evidence defendant had previously served penitentiary time, and closing argument referring to this evidence, so unfairly emphasized defendant's prior bad acts as to necessitate a new trial. The State points out that no objection to the evidence and argument was made during the course of the trial. In addition, the post-trial motion failed to include this allegation of error. The references to which defendant objects involve testimony concerning statements made by defendant. This testimony was elicited on cross-examination by defense counsel from the State witnesses, in redirect examination of the same witnesses, or in the defendant's own testimony.

■■■ The rules relating to the propriety of admitting evidence of prior convictions or other crimes is summarized in *People v. Chapin* (1980), 84 Ill. App. 3d 778, 781-82, 406 N.E.2d 579, 581:

"The general rule is firmly established that evidence of prior convictions or other crimes is inadmissible and incompetent evidence, prejudicial to the defendant. (*People v. Goodwin* (1979), 69 Ill. App. 3d 347, 387 N.E.2d 433; *People v. Hughes* (1977), 51 Ill. App. 3d 985, 367 N.E.2d 485.) The obvious basis for that rule of excluding such evidence is its suggestion to the jury that the defendant has criminal tendencies, which suggestion may affect their determination of his guilt or innocence in the case before them. (*People v. Gregory* (1961), 22 Ill. 2d 601, 177 N.E.2d 120.) In *Goodwin*, we found reversible error where an arresting officer testified that the defendant asked to be let go, because he didn't want 'to go back to prison.' (See *People v. Hawkins* (1972), 4 Ill. App. 3d 471, 281 N.E.2d 72.) Those cases, however, did not involve exceptions to the general rule of inadmissibility. The exceptions were set forth in *People v. McDonald* (1975), 62 Ill. 2d 448, 455, 343 N.E.2d 489[, 492]:

'Evidence which tends to prove a fact in issue is admissible though it may be evidence showing that the accused has committed a crime other than the one for which he is being tried, and evidence which goes to show motive, intent, identity, absence of mistake or *modus operandi* is admissible though it may show the commission of a separate offense.'

Under the exceptions, references by a defendant to his prior prison time have been admitted into evidence as relevant to the defendant's intent (*People v. Smith* (1972), 6 Ill. App. 3d 259, 285 N.E.2d 460) and as probative of the defendant's actions in committing the crime (*People v. Allen* (1975), 27 Ill. App. 3d 1054, 327 N.E.2d 387). In *People v. Smith* the court states:

'The fact that the answer also suggested defendant's conviction of another crime did not make it inadmissible \*\*\* to show, by immediate inference, malice, deliberation, ill-will or the intent required for the offense charged. [Citation.] When evidence is admissible on other grounds, it is not objectionable because it also discloses other offenses.' 6 Ill. App. 3d 259, 263[, 285 N.E.2d 460, 463]."

In *Chapin*, the defendant referred to having been in the penitentiary as part of his threat to the victim. Thus emphasizing his seriousness and willingness to follow through on his threat to blow the victim's head off, the statement was relevant to prove the mental state as an element of the offense of intimidation.

█ In the instant case, State's witness George Hermes testified that on September 5, 1986, about 10:30 a.m., he went to the victim's barber shop to do some jewelry business with the victim. Present were the victim, defendant, defendant's sister, and another girl. In conducting business, the victim got out a roller of sterling silver necklaces, spreading the necklaces out on the table. Defendant was washing windows and talking. Defendant said he needed some money and ought to just grab the roller and take off. The victim said something to the effect that defendant had not gotten out of the building yet. Defendant replied that if he wanted them, he'd just "stick" him and take the chains.

On cross-examination, defense counsel attempted to get the witness to testify that defendant was only joking. However, Hermes testified defendant's statement made him nervous. When asked by defense counsel what made the witness nervous about defendant's statement, Hermes said:

"Well, he—somebody, I think it was Peggy, come up with a remark, well, they'd send you back to the joint if you did something like that. His reply, 'Well, I'm institutionalized now, anyway, I'd just as soon be in the joint anyway.'"

On redirect examination, Hermes testified, "[defendant] had just gotten out that day and seemed to have a chip on his shoulder." He also iterated that defendant's statement about being institutionalized made him nervous.

Also on cross-examination, witness Rosie Crawley testified that during a telephone conversation with defendant, defendant told her that "if he had to go back to the pen for something, that he was going to go back to the pen for something good." In the same conversation, defendant threatened to kill the victim, according to this witness.

In taking the witness stand himself, defendant testified he had been convicted of five felonies and had been in prison for three. Defendant stated that a conversation testified to by State witness Richard Mansfield in which defendant complained the victim was having an affair with defendant's ex-wife could not have taken place because defendant was in the Graham Correctional Center the entire time that Mansfield said the conversation was held. On cross-examination, defendant stated that he was released from the penitentiary on September 3, 1986, and admitted drinking with Mansfield after his release and before going to Las Vegas following the murder on September 14. Defendant admitted to stating in front of Hermes that he was institutionalized anyway and liked it better back in the joint, but contended he was only kidding. Defendant referred to his release from the penitentiary when relating that he called his former employer and asked to return to work. He also referred to his penitentiary term when he tried to explain why he did not know what time it was when he and codefendant dropped by the victim's trailer in the middle of the night of the murder, saying he had been in the penitentiary the last three or four years and was therefore unaware what time the local taverns closed.

In this case, the State's theory of defendant's motive for the murder was the victim's relationship with defendant's ex-wife, who had become pregnant while defendant was imprisoned, in addition to defendant's greed. Therefore, the evidence concerning defendant having been in the penitentiary is relevant both to motive and to show defendant's intent to kill the victim by demonstrating defendant's seriousness and willingness to carry out his threats.

The prosecutor's closing argument does refer to the evidence, including defendant's having been in the penitentiary. On the other hand, defense counsel also referred to defendant's incarceration in closing argument. In light of all the evidence, the context of the language utilized by the prosecutor, the relation of the argument to the evidence, and the effect of the prosecutor's closing argument on defendant's rights, it cannot be said defendant was denied a fair trial. See *People v. Smith* (1972), 6 Ill. App. 3d 259, 285 N.E.2d 460.

■ In any event, by failing to object to the evidence and argument at trial and by failing to include these alleged errors in a posttrial motion filed by a new, substitute counsel, defendant has waived the consideration of these alleged errors on appeal. (*People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124.) The only reason we have reviewed the question to the extent we have here is not because we consider it to be plain error, but, rather, because the first issue raised

in this appeal by the defendant questioned the effectiveness of trial counsel and the failure to object to improper evidence might be some evidence that counsel was ineffective.

Having found no basis to support the allegation of ineffective assistance of counsel, the judgment of the circuit court of Morgan County is affirmed.

Affirmed.

LUND and KNECHT, JJ., concur.