The appellant, Steven L. Byrdsong, appeals from the denial of his Rule 32, Ala.R.Crim.P, petition for postconviction relief challenging his 1997 conviction for capital murder and his sentence of life imprisonment without the possibility of parole.[1] This Court, in an unpublished memorandum, affirmed Byrdsong's conviction and the sentence of life imprisonment. Byrdsong v. State, 738 So.2d 938 (Ala.Crim.App. 1998) (table). A certificate of judgment was issued on July 8, 1998.
On August 2, 1999, Byrdsong filed a Rule 32 petition attacking his conviction and sentence. The circuit court held an evidentiary hearing on the allegations in Byrdsong's petition and, in a thorough order, denied all relief. In his petition, Byrdsong presented numerous claims; however, we will address only that issue Byrdsong raised on appeal. "`"[A]llegations . . . not expressly argued on . . . appeal . . . are deemed by us to be abandoned." United States v. Burroughs, 650 F.2d 595,598 (5th Cir.), cert. denied, 454 U.S. 1037, 102 S.Ct. 580,70 L.Ed.2d 483 (1981).'" Brownlee v. State, 666 So.2d 91, *Page 472 
93 (Ala.Crim.App. 1995), quoting Burks v. State, 600 So.2d 374, 380
(Ala.Crim.App. 1991).
In the sole issue presented for our review, Byrdsong claims that the circuit court erred in denying his petition for relief because, he says, the circuit court erred in finding "that appointed trial counsel's attempts to collect monies, and collection of monies from [his] mother did not adversely affect [his] right to a fair trial." (Byrdsong's brief to this Court at p. 9.)
At the evidentiary hearing, the evidence indicated that on September 11, 1995, Byrdsong's mother agreed to pay Richard Waters $1,500 to represent Byrdsong on this matter at the preliminary hearing in district court. (C.R. 86.) Waters represented Byrdsong at the preliminary hearing and until the circuit court determined that Byrdsong was indigent. The circuit court then appointed Waters as counsel to represent Byrdsong on or about February 28, 1996.
Waters admitted at the evidentiary hearing that he collected monies from Byrdsong's mother after the circuit court appointed him to represent Byrdsong. Waters, however, maintained that these monies were not payment for his representation of Byrdsong at the circuit court level, but were payments for the services he had rendered at the district court level — before his appointment by the circuit court. According to Waters, because Byrdsong's mother was not able to pay $1,500 at the time the contract pursuant to which he represented Byrdsong was executed, he allowed her to make installment payments. Waters further testified that he never received payment in full for his representation of Byrdsong at the preliminary hearing.
Byrdsong's mother testified that she made payments to Waters to represent Byrdsong at trial and that these payments were in addition to the payments she made as required by her contract with Waters.
The record contains receipts from Waters indicating that payments were made by Byrdsong's mother to Waters before and after Waters's appointment. (C.R. 187-91.) Additionally, the record contains a bill indicating that on May 20, 1996, Byrdsong's mother still owed Waters $300, a portion of the retainer agreed upon for Waters's representation of Byrdsong at the preliminary hearing. (C.R. 87.) In its order, the circuit court addressed this claim as follows:
 "As to the defendant's allegations that trial counsel continued to collect money from defendant's mother after the time that he was appointed by the court to represent the defendant, the court finds that there was a contract for payment of $1,500.00 in connection with the defendant's preliminary hearing. Receipts presented to the court and which are evidence tend to show that trial counsel was paid less than $1,500 by the defendant's mother. Although the defendant's mother testified that she paid the defendant more than the amounts for which she has receipts, other receipts are not available to the Court. In any event, there is no indication that, even if the attorney collected money inappropriately, such activity impacted adversely on the defendant's right to a fair trial."
(C.R. 138.)
In Neelley v. State, 642 So.2d 494 (Ala.Crim.App. 1993), writ quashed,642 So.2d 510 (Ala. 1994), cert. denied, 514 U.S. 1005, 115 S.Ct. 1316,131 L.Ed.2d 197 (1995), Neelley alleged that her trial and appellate counsel engaged in unprofessional, unethical, and immoral conduct, which she argued resulted in ineffective assistance of counsel. This Court concluded that the circuit court properly found the performance *Page 473 
of Neelley's counsel was not deficient, stating:
 "`The trial court, when deciding this issue, faced a credibility question. . . . We accord the trial court's ruling deference. The trial court was in a better position than this court to rule on this question because the trial judge was able to observe the demeanor of the witness.'
 "Hallford v. State, 629 So.2d 6 (Ala.Cr.App. 1992). See also Spinks v. State, 564 So.2d 1043, 1046
(Ala.Cr.App. 1990); State v. Terry, 601 So.2d 161
(Ala.Cr.App. 1992).
 "`In giving meaning to the [constitutional requirement of effective assistance of counsel] . . . we must take its purpose — to ensure a fair trial — as the guide. The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.
"`. . .
 "`A convicted defendant's claim that counsel's assistance was so defective as to require a reversal of a conviction . . . has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.'
 "Strickland v. Washington, 466 U.S. [668,] 686-87, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)."
642 So.2d at 498.
In this case, the circuit court was confronted with a credibility choice and, as we concluded in Neelley, the circuit court was in a much better position to rule on such a question. The record supports the circuit court's findings and conclusions. We will not reverse a circuit court's ruling on a Rule 32 petition absent an abuse of discretion by the circuit court. Elliott v. State, 601 So.2d 1118, 1119 (Ala.Cr.App. 1992). We cannot find such an abuse in this case.
Moreover, assuming, for the sake of argument, that Byrdsong established that Waters had engaged in the unethical practice of requesting and receiving payment while serving as appointed counsel, we would reject Byrdsong's argument that counsel's unethical conduct created a conflict of interest that entitled him to a new trial.
Clearly, a request for and acceptance of payment for representing a defendant after counsel is appointed to represent an indigent defendant is improper. See Rules 1.5(f) and 8.4, Alabama Rules of Professional Conduct. See generally, American Bar Association, Code of Professional Responsibility; American Bar Association, Standards for the Defense Function. The request for, and receipt of, payment by appointed counsel, however, does not automatically establish an ineffective-assistance-of-counsel claim.
Under the test set out in Strickland v. Washington, 466 U.S. 668,104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), if a defendant establishes that his attorney has *Page 474 
a potential conflict of interest, to prove that the conflict resulted in a violation of his Sixth Amendment right to effective counsel, he must demonstrate that he was prejudiced. However, prejudice is presumed when a defendant establishes that his attorney had an actual conflict of interest that adversely affected the attorney's performance. Cuyler v.Sullivan, 446 U.S. 335, 350, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). Byrdsong urges us to conclude that counsel's alleged unethical behavior violates his constitutional right to counsel — i.e., that it is an actual conflict of interest. A trial counsel's solicitation or acceptance of payment after counsel has been appointed to represent an indigent defendant is highly unethical and merits the strongest condemnation. However, an unethical fee arrangement (and we are not saying the arrangement in this case was unethical) does not automatically indicate a deficient performance any more than an ethical fee arrangement automatically indicates that representation will be meaningful. This Court is greatly concerned when unethical conduct by trial counsel is alleged and when such conduct occurs, prompt disciplinary action must be taken. However, such unethical conduct may or may not be relevant in the determination of the effectiveness of counsel, depending upon all the circumstances.
In Neelley, supra, this Court determined that unprofessional, unethical, and immoral conduct by counsel established a potential
conflict of interest and that in order to succeed on a claim of ineffective assistance of counsel, the defendant must show that counsel's performance was deficient and that counsel's deficient performance deprived the defendant of a fair trial. Thus, an unethical fee arrangement by counsel would establish a potential conflict of interest and a defendant must show both that counsel's performance was deficient and that he was prejudiced by said performance before he is entitled to relief. Cf. Kohler v. Kelly, 890 F. Supp. 207 (W.D.N.Y. 1994), aff'd,58 F.3d 58 (2nd Cir. N.Y. 1995), cert. denied, 516 U.S. 995,116 S.Ct. 531, 133 L.Ed.2d 437 (1995); People v. Tippins, 173 A.D.2d 512,570 N.Y.S.2d 581 (N.Y.A.D. 1991); and People v. Armstrong,175 Ill. App.3d 874, 530 N.E.2d 567, 125 Ill.Dec. 409 (4th Dis. 1988). But see Harris v. Housewright, 697 F.2d 202 (8th Cir. 1982); Friedman v.United States, 588 F.2d 1010 (5th Cir. 1979).
In this case Byrdsong has met neither prong of Strickland. Brydsong has not shown how his counsel's performance was deficient because of the alleged unethical conduct. Nor has he shown that this alleged unethical conduct prejudiced the defense and that "but for" counsel's actions the outcome of his trial would have been different. Neelley, supra. The record discloses nothing to demonstrate that Byrdsong was actually prejudiced and that he did not receive a fair trial as a result of trial counsel's alleged accepting of monies from his mother after he had been appointed to represent Byrdsong. Based on our review of the evidence presented at the evidentiary hearing on Byrdsong's Rule 32 petition, we conclude that the circuit court properly denied Byrdsong's petition.
The judgment of the circuit court is affirmed.
AFFIRMED.
Long, P.J., and McMillan, Cobb, and Baschab, JJ., concur.
[1] Byrdsong was convicted of the murder of Bure Battle, made capital because it occurred during the commission of a robbery in the first degree. See § 13A-5-40(a)(2), Ala. Code 1975. *Page 475